UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE DOWNS LAW GROUP, P.A.,     )<br><br>    Plaintiff,     )<br><br>    v.     )<br><br>UNITED STATES COAST GUARD,     )<br><br>    Defendant.     ) | Civil Action No. 21-2407 (RBW) |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant The United States Coast Guard ("Coast Guard") respectfully moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 7.  The reasons for this motion are set forth in the attached Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, Statement of Material Facts as to Which There Is No Genuine Issue ("SOF").

Dated: May 23, 2022
    Washington, D.C.

                        Respectfully submitted,

                        MATTHEW M. GRAVES, D.C. Bar #481052
                        United States Attorney

                        BRIAN P. HUDAK
                        Chief, Civil Division

                        By: _____/s/_____
                        PATRICIA MCBRIDE
                        Assistant United States Attorney
                        Judiciary Center Building
                        601 D Street, N.W.
                        Washington, D.C.  20530
                        Telephone: (202) 252-7123

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
THE DOWNS LAW GROUP, P.A.,            )
                                                    )
            Plaintiff,                            )
                                                    )
    v.                                              )
                                                    )        Civil Action No. 21-2407 (RBW)
UNITED STATES COAST GUARD,          )
                                                    )
            Defendant.                         )
                                                    )
                                                    )
_____    )

**DEFENDANT'S STATEMENT OF
<u>MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE</u>**

Pursuant to Local Civil Rule 7(h)(1), Defendant, The United States Coast Guard ("Coast Guard") hereby submits the following Statement of Material Facts as To Which There Is No Genuine Dispute in support of Defendant's Motion for Summary Judgment in this action brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

**Overview of the Response to Plaintiff's FOIA Request**

1.      Plaintiff submitted two FOIA requests to the Coast Guard in June and September 2020.  Declaration of Brian Judge ("Judge Decl.") ¶ 3.  Both of the original requests sought the same broad categories of records related to Deepwater Horizon. Plaintiff sought the following records created or received in 2010:

  a.  All records which show approval of, commendation for, medals for, and letters of commendation for all Coast Guard personnel for service during the cleanup of the BP Deepwater Horizon Oil Spill;

  b.  All records which release news of commendations of Coast Guard personnel for service during the cleanup;

  c.  All records bringing the public's attention to the service of Coast Guard personnel during the cleanup;

    d.   All records issued to Coast Guard personnel during the cleanup;

    e.   All records that depict the names of Coast Guardsmen who served on the water during the cleanup;

    f.   All records that would lead to the public's understanding of the names and numbers of Coast Guard personnel who served during the cleanup;

    g.   All records that show the work of Coast Guard personnel during the cleanup; and

    h.   All records sent by the Coast Guard to Congress describing commendable actions by Coast Guard personnel during the clean-up.

*Id.* ¶ 33.

2.      Over a year later and after Plaintiff filed the complaint in this litigation, Plaintiff narrowed the request in October 2021 to "simply . . . the names of the Coast Guard members that participated in the 2010 Deepwater Horizon BP oil spill clean-up operations." *Id*. ¶ 3.

3.      By the time the request was narrowed, the Military Medals and Awards Division of the Coast Guard's Personnel Service Center—which manages Coast Guard policy relating to military medals and awards—had already located award tracking spreadsheets depicting the names of thousands of personnel who served in the Deepwater Horizon response and received an award for their service. *Id.* ¶ 4. After the request was narrowed, the Eighth Coast Guard District ("District Eight")—which led many aspects of the Deepwater Horizon response and established an Awards Team for awards for service in the response—located an additional award tracking spreadsheet. *Id*. Other Coast Guard offices assigned to the original request had located records responsive to the original request, which were released to Plaintiff, but they did not locate personnel lists or other documents responsive to the request as narrowed. *Id.* ¶ 28.

4.      The Coast Guard located three Deepwater Horizon awards tracking sheets responsive to the narrowed request:

a. "Deepwater Horizon Master SOS Roster," a spreadsheet containing the master list of Coast Guard personnel who received the Special Operations Service Ribbon ("SOS"), which was authorized for service in support of the Deepwater Horizon response for 21 days or more;

b. "LANT Area DWH D8 Awards Team Tracking Spreadsheet," containing the District Eight Awards Team's tracking spreadsheet for various levels of awards related to Coast Guard personnel's service in support of the Deepwater Horizon response; and

c. "CG DWH SOS Award Recipient List 27OCT11," containing a list of Coast Guard SOS recipients for service in support of the Deepwater Horizon response.

*Id*. ¶ 17.

5.     These award tracking spreadsheets capture the names of virtually all personnel who served in the response in 2010, as the Special Operations Service Ribbon was awarded to all personnel who served in the response for 21 days or more.  *Id*.

6.     The Coast Guard released all responsive records to Plaintiff with the exception of the names and other personally identifying information of junior Coast Guard personnel, O5/GS-15 and below, which was withheld under FOIA exemption 6 because releasing this information would be a clearly unwarranted invasion of personal privacy.  *Id*. ¶ 6.

7.     The Coast Guard searched for records in all areas that were likely to contain responsive records.  *Id*. ¶ 8.  The agency released to Plaintiff all responsive records that it located but redacted all junior personnel's personally identifying information, including names and employer identification numbers, pursuant to FOIA exemption 6.  *Id*.

### Overview of the Coast Guard's FOIA Process

8.     The Office of Privacy Management, a component of the Coast Guard's Office of Information Management in Washington, DC, processes all FOIA requests.  *Id*. ¶ 9.  When a request is received, the Office of Privacy Management logs the request into the Coast Guard's FOIA Status Report Database, a tool to track the status of FOIA requests.  *Id*.  After logging the

3

request into this database, the Office of Privacy Management evaluates the apparent subject matter of the request and sends it to the Coast Guard unit(s) or office(s) most likely to have responsive records, as the Coast Guard does not have a centralized document management system that it can search when it receives a FOIA request. *Id*. ¶ 10. The assigned offices or units are tasked with searching for responsive records and preparing a response.

9.    When the assigned unit or office receives a request, a collateral-duty FOIA officer searches for responsive documents and prepares a response. *Id*. ¶ 11. Generally, this requires the FOIA officer to contact other employees of that unit or office to determine if they have any responsive documents. *Id*. In completing this process, the FOIA officer searches in all files that are likely to have responsive documents. *Id*. Typically, the FOIA officer will search networked hard drives and computer servers by conducting a key-word search. *Id*.

### The Coast Guard Receives Plaintiff's Request

10.    The Coast Guard's Office of Privacy Management received Plaintiff's requests on June 18, 2020, and September 4, 2020. *Id*. ¶ 12. The Office of Privacy Management assigned Plaintiff's first FOIA request the tracking number 2020-CGFO-01820 and assigned Plaintiff's second FOIA request the tracking number 2020-CGFO-02512. *Id*. ¶ 14. Both requests sought the same categories of records, including, among other categories of records, records depicting the names of Coast Guard personnel who served in the Deepwater Horizon cleanup. *Id*.

11.    The Office of Privacy Management evaluated the subject matter of the requests and forwarded each request to the Coast Guard offices and units likely to have responsive record: the Office of Investigations Casualty Analysis, the Personnel Service Center, District Eight, and the Office of Governmental and Public Affairs. *Id*. ¶ 15. The second request was sent to the Office of Investigations Casualty Analysis. *Id*.

4

12.     The Coast Guard had not yet completed searching for the first FOIA Request when, as confirmed in an e-mail on October 27, 2021, Plaintiff narrowed the request to "simply . . . the names of the Coast Guard members that participated in the 2010 Deepwater Horizon BP oil spill clean-up operations." *Id*. ¶ 16.   The Coast Guard does not keep a comprehensive list of all the individuals that participated in the 2010 Deepwater Horizon BP oil spill clean-up.  *Id*. ¶ 32.

## Locations Searched

### *Military Medals and Awards Division*

13.     The Military Medals and Awards division of the Personnel Service Center was assigned to search for records responsive to the original FOIA request on June 18, 2020.  *Id*. ¶ 18. This division manages all Coast Guard policy relating to military medals and awards.  *Id*.  The Military Medals and Awards division searched their files for awards records related to Deepwater Horizon and coordinated with District Eight, locating the following awards tracking spreadsheets containing the names of thousands of Coast Guard personnel who served in the Deepwater Horizon response and received an award for their service:

   a.  "CG DWH SOS Award Recipient List 27OCT11," which contains a list of Coast Guard Special Operations Service Ribbon recipients for service in support of the Deepwater Horizon response; and

   b.  "LANT Area DWH D8 Awards Team Tracking Spreadsheet," containing the District Eight Awards Team's tracking spreadsheet for various levels of awards related to Coast Guard personnel's service in support of the Deepwater Horizon response.

*Id*. ¶ 19.

14.     The Office of Privacy Management had assigned the original FOIA request to the Personnel Service Center on June 18, 2020.  The Personnel Service Center's collateral-duty FOIA officer sent the request to the Military Medals and Awards division to search their files for

responsive documents.  *Id*. ¶ 20.  Personnel with Military Medals and Awards division searched the division's electronic files for Deepwater Horizon records.  *Id*. ¶ 21.

The division maintains awards files organized by date, so personnel searched the 2011 awards folder for records titled or containing awards records related to Deepwater Horizon and located a spreadsheet titled, "CG DWH SOS Award Recipient List 27OCT11," which contains a list of Coast Guard Special Operations Service Ribbon recipients for service in support of the Deepwater Horizon response.  *Id*. ¶ 22.

15.     Because Coast Guard policy directed awards at or below the Meritorious Service Medals level to be routed through District Eight for processing, the Military Medals and Awards division also contacted the District Eight administrative team on June 30, 2020, for awards records. *Id*. ¶ 23.  District Eight personnel provided the Military Medals and Awards division the "LANT Area DWH D8 Awards Team Tracking Spreadsheet," containing the District Eight Awards Team's tracking spreadsheet for various levels of awards related to Coast Guard personnel's service in support of the Deepwater Horizon response.  *Id*.

*District Eight*

16.     District Eight's personnel led many aspects of the response to the Deepwater Horizon Oil Spill, and District Eight established an Awards Team for Deepwater Horizon.  *Id*. ¶ 24. District Eight searched for Deepwater Horizon records and located a master list of Coast Guard personnel who received the Special Operations Service Ribbon, which was approved for all personnel directly supporting Deepwater Horizon containment, cleanup, and recovery efforts for 21 days or more.  *Id*.

17.     The District Eight collateral-duty FOIA officer conducted a keyword search of District Eight's shared folders for responsive documents.  *Id*. ¶ 27. The FOIA officer searched with

the terms "deepwater horizon," "DWH," and "deepwater horizon awards," but located no records with personnel lists. *Id*. The FOIA officer contacted personnel with District Eight's Incident Management Team, who confirmed they no longer maintained Deepwater Horizon records. *Id*. ¶ 26. The FOIA officer also contacted the District Eight Resource Military Personnel Branch, which handles administrative aspects of the D8 staff and had oversight over the awards processed through District Eight. Branch personnel searched their electronic files containing awards generated, processed, and completed through their office for files related to Deepwater Horizon. *Id*. The office located an archived folder titled "DHWZ Award Team" under the branch's "Awards" files. Within the folder, they located the only document covering Coast Guard members involved in the response that was marked as complete. *Id*.

<em>Other Offices Assigned to the Request</em>

18.     At the time the request was narrowed, neither of the other offices assigned to process the original FOIA requests—the Office of Governmental and Public Affairs and the Office of Investigations Casualty Analysis—had located records depicting lists of the names of all Coast Guard personnel who served in the cleanup. *Id*. ¶ 28. The Office of Governmental and Public Affairs was assigned to respond to the original request because the original, broader request sought imagery and media related to the Deepwater Horizon response. *Id*. The office had located blog posts and imagery responsive to the original request, which were released to Plaintiff without redactions. *Id*.

19.     The Office of Investigations Casualty Analysis leads the Coast Guard's investigation program to promote marine safety, protect the maritime environment, and to prevent future maritime accidents. *Id*. ¶ 29. The Chief of the FOIA Division of the Office of Investigations Casualty Analysis Information returned the original request back to the Office of Privacy

7

Management in December 2020, stating that the requested information did not exist in the Coast Guard's Marine Information for Safety and Law Enforcement ("MISLE") database. *Id*. Coast Guard personnel use the database to record operational activities, including pollution response operations. *Id*. The FOIA division searched MISLE for personnel rosters associated with "Deepwater Horizon" in MISLE but did not locate any personnel lists associated with the cleanup. *Id*.

### The Office of Claims and Litigation

20.     Upon notification of this lawsuit, the Coast Guard's Office of Claims and Litigation took over the responsibility for consolidating the responses from all offices tasked with searching for responsive records. *Id*. ¶ 30.

21.     On October 25, 2021, the Office of Claims and Litigation contacted the Office of Marine Environmental Response Policy, which provides guidance, policy, and resources for Coast Guard Marine Environmental Response planning, preparedness, and operations to prevent, enforce, investigate, respond to, and to mitigate the threat, frequency, and consequences of oil discharges and hazardous substance releases into the navigable waters of the United States. *Id*. ¶ 31. The Office of Marine Environmental Response Policy returned the request because, as a policy office, the office does not originate, review, or create personnel records or operational records. *Id*. The office's collateral-duty FOIA officer also searched through the office's electronic Deepwater Horizon files for awards recipient lists or rosters of personnel but located no responsive records. *Id*.

22.     A comprehensive list of personnel who participated in the response does not exist. *Id*. ¶ 32. However, the award tracking spreadsheets that were released and provided to Plaintiff, capture the names of virtually all personnel who served in the response in 2010, as the Special

Operations Service Ribbon was awarded to all personnel who served in the response for 21 days or more. *Id.* ¶ 4. The very information Plaintiff seeks—the names of Coast Guard personnel below a certain rank—is privacy information exempt from release under FOIA exemption 6. *Id.*

**Other Documents Released**

24.     In addition to the award tracking spreadsheets released to Plaintiff, the Coast Guard also released other records that had been located in response to the original, broader FOIA request before the request was narrowed. *Id.* ¶ 33.

25.     The assigned offices and units had already located records responsive to the broader request by the time Plaintiff narrowed the request in October 2021, so the Coast Guard decided to release these records as well:

> c.   Ten Coast Guard Compass blog posts containing information about the Coast Guard's response to Deepwater Horizon;
>
> d.   ALCOAST 515/10, a service-wide message providing award guidance for the Deepwater Horizon oil spill response;
>
> e.   "On Scene Coordinator Report Deepwater Horizon Oil Spill," the On-Scene Coordinator Report documenting the response to the oil spill; and
>
> f.   A Defense Visual Information Service search link to a pre-set search with specific parameters that include all images accessioned by Coast Guard units during 2010 that mention Deepwater Horizon.

*Id.* ¶ 34.

26.     The Coast Guard released all responsive records to Plaintiff with the exception of the privacy information of junior personnel, O5/GS-15 and below, which was redacted under FOIA exemption 6, 5 U.S.C § 552(b)(6). *Id.* ¶ 35.   Exemption 6 permits an agency to withhold records when release would cause a clearly unwarranted invasion of personal privacy. *Id.* ¶ 36.   The redacted and withheld information identified in the *Vaughn* index consists of only the names, ranks, rates, and personally identifying information of junior personnel, which would constitute an unwarranted invasion privacy if released. *Id.*

27.     Determining whether the release of information would constitute an unwarranted invasion of privacy requires balancing the public's right to disclosure against the individual's right to privacy.  *Id.* ¶ 37.   The privacy interests of the individuals whose personally identifying information is in these records outweighs any minimal interest the public at large has in disclosure of the individuals' personally identifying information.  *Id.*  The Coast Guard is a component of the Department of Homeland Security and a spearhead agency for homeland security, having multiple sensitive law enforcement and intelligence gathering missions.  *Id.*  Coast Guard personnel and their family members are vulnerable to unwanted contact and harassment or violence from individuals who maliciously acquire and disseminate this type of information.  *Id.*  Coast Guard personnel therefore have a substantial interest in having their personally identifying information— including their names, rate and rank, duty address, and titles—protected and withheld from public release.  *Id.*

28.     Any private interest a requester has in the withheld information does not factor into this balancing test.  *Id.* ¶ 38.  Additionally, although some members of the public may know some of the withheld information, this does not negate an individual's privacy interest in release or further dissemination of personally identifying information to the public.  *Id.*

29.     Any public interest in the personally identifying information of junior personnel is minimal, as individuals' personally-identifying information does not hinder the public's understanding of the Coast Guard's performance of its statutory duties.  *Id.* ¶ 39.  This personal information sheds no light on the Coast Guard's operations and activities.  *Id.*  All other information in these records of potential public interest—information about the number of personnel involved, the length and location of their service, and what actions they participated in, for example—was released.  *Id.*

10

30.     In reviewing the responsive material, the Agency conducted a detailed, line-by-line review to ensure all segregable information was released and only withheld information that would foreseeably harm the privacy interests protected by exemption 6. *Id*. ¶ 40.   Only personally identifying, exempt information—the names, ranks, rates, employer identification numbers, and similar personally identifying information of junior personnel—was withheld from the responsive records. *Id*.  The Agency withheld this information because release of these individuals' names and other personally identifying information would cause an unwarranted invasion of their privacy and would foreseeably subject these individuals to unwanted contact and harassment based on their association with the Coast Guard and Department of Homeland Security. *Id*.  The Deepwater Horizon incident and response are well-known and highly publicized events; therefore, these individuals are at a particularly heightened risk of unwanted contact. *Id*. ¶ 37. All other segregable information contained in the records, including information about the number of personnel, the length and location of their service, and what actions they participated in, was released.  *Id*. ¶ 40. No records were withheld in their entirety.  *Id*.

Dated: May 24, 2022
       Washington, D.C.

                                   Respectfully submitted,

                                   MATTHEW M. GRAVES, D.C. Bar #481052
                                   United States Attorney

                                   BRIAN P. HUDAK
                                   Chief, Civil Division

                                   By:_____/s/_____
                                   PATRICIA MCBRIDE
                                   Assistant United States Attorney
                                   Judiciary Center Building
                                   601 D Street, N.W.
                                   Washington, D.C.  20530

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ———————————————————— | ) |
| THE DOWNS LAW GROUP, P.A., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )  Civil Action No. 21-2407 (RBW) |
| UNITED STATES COAST GUARD, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| ———————————————————— | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT**

Pursuant to Federal Rule of Civil Procedure ("Rule") 56(c), the United States Coast Guard ("Coast Guard"), by and through the undersigned counsel, respectfully submits this Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment in response to the Complaint filed by the Downs Law Group ("Plaintiff").

Plaintiff commenced this action under the Freedom of Information Act, 5 U.S.C. § 552, *et seq*. ("FOIA"), seeking, among other records, records relating to Coast Guard personnel who were in some way recognized for service during the cleanup of the BP Deepwater Horizon Oil Spill. *See* ECF No. 1 at 1.  Because Defendant's search was reasonably calculated to return responsive records, it was an adequate search, and Defendant is entitled to summary judgment on that issue. Moreover, Defendant is entitled to summary judgment on their withholdings because all responsive records were released to Plaintiff and properly redacted under FOIA Exemption 6, as the records contained the personally identifiable information of junior Coast Guard employees, disclosure of which "would constitute a clearly unwarranted invasion of personal privacy." The

redacted and withheld information identified in the *Vaughn* index, attached as Exhibit E, consists only of the names, ranks, rates, and personally identifying information of junior personnel that would constitute an unwarranted invasion of privacy if released.  *Id*.  ¶ 36.

## BACKGROUND SUMMARY

Plaintiff's FOIA request, as ultimately narrowed, sought records depicting the names of Coast Guard personnel who served in the 2010 Deepwater Horizon oil spill cleanup operations. *Judge Decl*. ¶ 3.  The Coast Guard does not have a comprehensive list of all personnel who served in the response.  *Id*. ¶ 32.  However, the Coast Guard located three award tracking spreadsheets depicting the names of virtually all personnel who served in the response and released these to Plaintiff. *Id*.  ¶ 4.  The Coast Guard released these records to Plaintiff with only the privacy information of junior personnel, O5/GS-15 and below, redacted under FOIA exemption 6, 5 U.S.C § 552(b)(6).  *Id*.  ¶ 6.

### a. Plaintiff's Original FOIA Requests

Plaintiff originally submitted two FOIA requests to the Coast Guard in June and September 2020.  Judge Decl. ¶ 3.  Both of the original FOIA requests sought the following records created or received during calendar year 2010:

a.  All records which show approval of, commendation for, medals for, and letters of commendation for all Coast Guard personnel for service during the cleanup of the BP Deepwater Horizon Oil Spill;

b.  All records which release news of commendations of Coast Guard personnel for service during the cleanup;

c.  All records bringing the public's attention to the service of Coast Guard personnel during the cleanup;

d.  All records issued to Coast Guard personnel during the cleanup;

e.  All records that depict the names of Coast Guardsmen who served on the water during the cleanup;

      f.   All records that would lead to the public's understanding of the names and numbers of Coast Guard personnel who served during the cleanup;

      g.   All records that show the work of Coast Guard personnel during the cleanup; and

      h.   All records sent by the Coast Guard to Congress describing commendable actions by Coast Guard personnel during the clean-up.

Judge Decl. ¶ 36.

The Coast Guard initiated a search for responsive documents by assigning the requests to those offices likely to have responsive records: the Office of Investigations Casualty Analysis, the Personnel Service Center, District Eight, and the Office of Governmental and Public Affairs. Judge Decl. ¶ 15.

### b. Plaintiff Narrowed the Request

Over a year later, after filing the complaint in this litigation, Plaintiff narrowed the request in October 2021 to "simply . . . the names of the Coast Guard members that participated in the 2010 Deepwater Horizon BP oil spill clean-up operations." *Id*. ¶ 4. The Coast Guard does not keep a comprehensive list of all those individuals that participated in the 2010 Deepwater Horizon BP oil spill clean-up. *Id*. ¶ 32.

At or around the time the request was narrowed, the Military Medals and Awards Division of the Coast Guard's Personnel Service Center—which manages Coast Guard policy relating to military medals and awards—had located Deepwater Horizon award tracking spreadsheets. Judge Decl. ¶ 4. After the request was narrowed, the Eighth Coast Guard District ("District Eight")— which led many aspects of the Deepwater Horizon response and established an Awards Team for awards for service in the response—located an additional award tracking spreadsheet. *Id*.

These three spreadsheets located were released to Plaintiff:

     i.   "Deepwater Horizon Master SOS Roster," a spreadsheet containing the master list of Coast Guard personnel who received the Special Operations Service Ribbon ("SOS"), which was authorized for service in support of the Deepwater Horizon response for 21 days or more;

     j.   "LANT Area DWH D8 Awards Team Tracking Spreadsheet," containing the District Eight Awards Team's tracking spreadsheet for various levels of awards related to Coast Guard personnel's service in support of the Deepwater Horizon response; and

     k.   "CG DWH SOS Award Recipient List 27OCT11," containing a list of Coast Guard SOS recipients for service in support of the Deepwater Horizon response.

*Id*. ¶¶ 16-17.

These award tracking spreadsheets capture the names of virtually all personnel who served in the response in 2010, as the Special Operations Service Ribbon was awarded to all personnel who served in the response for 21 days or more.  *Id*.

In addition to producing these award tracking spreadsheets to Plaintiff, the Coast Guard released other records responsive to the original, broader request because these records had already been located at the time Plaintiff narrowed the request to just records containing the names of Coast Guard personnel who served in the cleanup.  *Id*. ¶ 5.

The Coast Guard released all responsive records to Plaintiff with the exception of the names and other personally identifying information of junior Coast Guard personnel, O5/GS-15 and below, which was withheld under FOIA exemption 6 because releasing this information would cause a clearly unwarranted invasion of personal privacy.  *Id*. ¶ 6.

The Coast Guard searched for records in all areas that were likely to contain responsive records.  *Id*. ¶ 8.  The agency released to Plaintiff all responsive records that it located but redacted all junior personnel's personally identifying information, including names and employer identification numbers, pursuant to FOIA exemption 6.  *Id*.

## STANDARD OF REVIEW

### a.  General Summary Judgment Standard

Where no genuine dispute exists as to any material fact, summary judgment is required. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  A genuine issue of material fact is one that would change the outcome of the litigation.  *Id*. at 247.  "The burden on the moving party may be discharged by 'showing'—that is, pointing out to the [Court]—that there is an absence of evidence to support the non-moving party's case."  *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987).  In *Celotex Corp. v. Catrett*, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute.  477 U.S. 317, 322-23 (1986).

### b.  Summary Judgment Standard as Applied to FOIA Cases

FOIA cases are appropriately resolved at summary judgment.  *See Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).  For purposes of summary judgment, an agency's decision to withhold information from a FOIA requester is subject to *de novo* review by the Courts. *Hayden v. Nat'l Sec. Agency Cent. Sec. Serv.*, 608 F.2d 1381, 1384 (D.C. Cir. 1979).  In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and, if applicable, that each document that falls within the class requested has been produced, is unidentifiable, or is exempt from disclosure.  *Students Against Genocide v. Dept. of State*, 257 F.3d 828, 833 (D.C. Cir. 2001); *Weisberg v. Dep't. of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980).

"Under the Federal Rules of Civil Procedure, a motion for summary judgment cannot be 'conceded' for want of opposition.  The burden is always on the movant to demonstrate why

summary judgment is warranted.  The nonmoving party's failure to oppose summary judgment does not shift that burden.  The District Court must always determine for itself whether the record and any undisputed material facts justify granting summary judgment." *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016) (internal quotations omitted).

An agency may defeat the summary judgment requirements in a FOIA case by providing the Court and the Plaintiff with affidavits or declarations and other evidence, which show the scope and method of the search and that the responsive documents were produced or are exempt from disclosure.  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *Hayden v. NSA*, 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979); *Church of Scientology v. U.S. Dep't of Army*, 611 F.2d 738, 742 (9th Cir. 1980); *Trans Union LLC v. FTC*, 141 F.Supp.2d 62, 67 (D. D.C. 2001) (summary judgment in FOIA cases may be resolved solely on the basis of agency affidavits "when the affidavits describe 'the documents and the justifications for non-disclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'") (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)); *see also Public Citizen, Inc. v. Dep't of State*, 100 F.Supp.2d 10, 16 (D. D.C. 2000), *aff'd in part, rev'd in part*, 276 F.3d 634 (D.C. Cir. 2002).

As demonstrated below, the Coast Guard has satisfied its obligation to conduct adequate searches for records responsive to Plaintiff's FOIA request, has disclosed all non-exempt responsive records, and has sufficiently justified its withholding of exempt information pursuant to FOIA exemption b(6).  5 U.S.C. § 552.  Thus, there is no genuine issue as to any material fact, and Defendant COAST GUARD is entitled to judgment as a matter of law.

## ARGUMENT

### a. Defendant Conducted an Adequate Search

Defendant conducted an adequate search because it was reasonably calculated to return responsive records. The Defendant has met the reasonableness standard in conducting a search for records concerning Plaintiff's FOIA request and is therefore entitled to summary judgment.

#### i. Adequacy of the Search

In responding to a FOIA request, an agency must conduct a reasonable search for responsive records. *Oglesby*, 920 F.2d at 68; *Weisberg v. United States Dep't of Justice*, 705 F.2d 1344, 1352 (D.C. Cir. 1983). Because a fundamental principle behind FOIA "is public access to government documents," courts require "agencies to make more than perfunctory searches and, indeed, to follow through on obvious leads to discover requested documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151 (1989)); *Campbell v. DOJ*, 164 F.3d 20, 27 (D.C. Cir. 1998).

An agency is not required to search every record system but need only search those systems in which it believes responsive records are likely to be located. *Oglesby*, 920 F.2d at 68. "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Fischer v. U.S. Dept. of Justice*, 596 F.Supp.2d 34, 42 (D.D.C. 2009) (quoting *Valencia-Lucena v. United States Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (internal citation and quotation marks omitted)).

Thus, an agency may conduct an adequate search under FOIA without locating any responsive records. Furthermore, even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent and reasonable. *See Nation Magazine, Washington Bureau v. U.S*

7

*Customs Service*, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).   Thus, "[t]he search need only be reasonable; it does not have to be exhaustive." *Miller v. United States Dep't of State*, 779 F.2d 1378, 1383 (8ᵗʰ Cir. 1985) (citing *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)).

The burden rests with the agency to establish that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68; *see also SafeCard Services v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).   An agency may prove the adequacy of its search through a reasonably detailed declaration. *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982); *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978), *cert. denied*, 445 U.S. 927 (1980); *Miller*, 779 F.2d at 1383 ("An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, non-conclusory and submitted in good faith").   An affidavit is "reasonably detailed" if it "set[s] forth the search terms and the type of search performed and aver[s] that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby*, 920 F.2d at 68; *see also Defs. of Wildlife*, 623 F.Supp.2d at 92 (finding declaration deficient where it failed to detail the types of files searched, the filing methods, and the search terms used).   However, agency affidavits that "do not denote which files were searched, or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [the requester] to challenge the procedures utilized" are insufficient to support summary judgment. *Weisberg*, 627 F.2d at 371.   Moreover, conclusory assertions about the agency's thoroughness are insufficient. *Morley v. Cent. Intelligence Agency*, 508 F.3d 1108, 1121 (D.C. Cir. 2007); *Nat'l Sec. Counselors v. CIA*, 849 F.Supp.2d 6, 11 (D. D.C. 2012) ("The affidavit must explain the scope and method of [its] search in a non-conclusory

fashion.").

Although the agency has the burden of proof on the adequacy of its search, the "affidavits submitted by an agency are 'accorded a presumption of good faith,'" *Carney v. United States Dep't of Justice*, 19 F.3d 807, 812 (2d Cir.), *cert. denied*, 513 U.S. 823 (1994) (quoting *SafeCard Services*, 926 F.2d at 1200).   Thus, once the agency has met its burden regarding the adequacy of its search, the burden shifts to the requester to rebut the evidence by a showing which can be rebutted with "evidence of agency bad faith," *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981), or when "a review of the record raises substantial doubt" that certain materials were overlooked despite well-defined requests.   *Valencia-Lucena*, 180 F.3d at 326 (citing *Founding Church of Scientology, Inc. v. National Sec. Agency*, 610 F.2d 824, 837 (D.C. Cir. 1981); *see also Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1981) ("If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper.").   A requester may not rebut agency affidavits with purely speculative allegations. *See Carney*, 19 F.3d at 813; *SafeCard Services*, 926 F.2d at 1200; *Maynard v. CIA*, 986 F.2d 547, 559-60 (1st Cir. 1993).

### *ii. Defendant Conducted an Adequate Search*

The Coast Guard searches, which are described in detail in the Judge Declaration, clearly satisfied its obligations under the FOIA.   An agency's search will be deemed reasonable if the agency searches the "places most likely to contain responsive documents."   *Carter, Fullerton & Hayes v. FTC*, 637 F. Supp. 2d 1, 7 (D.D.C. 2009).

Here, as detailed in the Judge Declaration, the Coast Guard's search for responsive records was conducted by contacting those areas in the agency most likely to possess responsive records. Judge Decl. ¶ 15.   Multiple offices were initially contacted to respond to the original, broader

request: the Medals and Awards division of the Personnel Service Center, which manages all policy and items relating to military medals and awards; District Eight, which led many aspects of the response to the Deepwater Horizon Oil Spill and established a Deepwater Horizon Awards Team; the Office of Investigations Casualty Analysis, which leads the Coast Guard's investigation program to promote marine safety; and the Office of Governmental and Public Affairs, which coordinates the public affairs activities for Coast Guard. *Id*. ¶ 15.  As detailed in the Judge Declaration, the agency representatives assigned to process Plaintiff's request used their expertise and coordinated with other personnel in their offices and units to conduct targeted searches for responsive records in District Eight's electronic files; the Personnel Service Center-Personnel Services Division-Medals and Awards' files; and the Coast Guard's Marine Information for Safety and Law Enforcement ("MISLE") database. *Id*. ¶ 4, 18–29.  The Office of Governmental and Public Affairs was not likely to maintain records responsive to the request, as narrowed. *Id*. ¶ 28. Assigned personnel conducted key word searches of electronic files to locate records related to Deepwater Horizon and leveraged their expertise and knowledge of their office's filing systems to target those locations mostly likely to contain responsive records. *Id*. ¶ 22–23, 26–29, 31.  To ensure a complete search, the agency ruled out departments within the assigned offices that did not maintain the sought information. *Id*. ¶ 26, 28–29.  The individuals who worked on the case confirmed that these locations did not contain any responsive records. *Id*. ¶ 26–29.  Other than the documents produced to Plaintiff, the assigned offices located no other responsive documents. *Id*. ¶ 26–29.

Further, upon receipt of the complaint in this litigation, Coast Guard personnel took additional steps to ensure all non-exempt, responsive records were located and released to Plaintiff by collecting the records located by the assigned units and offices, confirming the non-existence

10

of additional responsive documents within the assigned units and offices, and ruling out additional locations for responsive records.  Judge Decl. ¶ 30–35.

The Coast Guard does not maintain a comprehensive list of personnel who participated in the 2010 response.  *Id*. ¶ 4.  However, the award tracking spreadsheets capture the names of virtually all personnel who served in the response in 2010, as the Special Operations Service Ribbon was awarded to all personnel who served in the response for 21 days or more.  *Id*.

Plaintiff alleges that the Coast Guard failed to perform an adequate search, but the thorough steps taken by the Coast Guard to locate responsive documents constitute an adequate search reasonably calculated to locate all responsive records to Plaintiff's request.  In sum, because the Coast Guard's search was reasonably calculated to return responsive records, it was adequate under FOIA and summary judgment is appropriate.

**b. Defendant Properly Invoked FOIA Exemptions 6 to Protect Personally Identifying Information**

### i. *FOIA Exemption 6*

Although the records that an agency locates in response to a request for records ordinarily must be produced, FOIA authorizes agencies to withhold certain documents and information; namely, those that satisfy the requirements of any of the nine statutory exemptions.  *See Milner v. Dep't of Navy*, 562 U.S. 562, 564 (2011).  Exemption 6 shields information about individuals in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  For FOIA Exemption 6 to apply, the information at issue must be maintained in a government file and "appl[y] to a particular individual." *Dep't of State v. Wash. Post Co*., 456 U.S. 595, 602 (1982).

Once these thresholds are met, FOIA Exemption 6 requires the agency to balance the

individual's right to privacy against the public interest in disclosure, s*ee Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976); *Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991).  Privacy is of particular importance in the FOIA context because disclosure under FOIA is tantamount to disclosure to the public at large.  *See Painting & Drywall Work Preservation Fund, Inc. v. HUD*, 936 F.2d 1300, 1302 (D.C. Cir. 1991).  Thus, the Supreme Court has adopted a broad construction of the privacy interests protected by Exemption 6.  *See Reps. Comm.*, 489 U.S. at 763.  Courts have recognized individuals' substantial privacy interest in personally identifying information such as individuals' names, addresses, email addresses, phone numbers, and social security numbers. *See Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 600 (1982) (finding that "[i]nformation such as place of birth, date of birth, date of marriage, employment history, and comparable data . . . would be exempt from any disclosure that would constitute a clearly unwarranted invasion of personal privacy"); *Maryland v. VA*, 130 F. Supp. 3d 342, 353 (D.D.C. 2015); *Performance Coal Co. v. U.S. Dep't of Labor*, 847 F. Supp. 2d 6, 17-18 (D.D.C. 2012). Further, federal employees involved in law enforcement, military personnel, and employees in sensitive occupations have substantial privacy interests in their personally identifying information. *See Waterman v. IRS*, 288 F. Supp. 3d 206, 211 (D.D.C. 2018).

By contrast, the courts have narrowly construed the public interest in disclosure of information.  The "only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is contribut[ing] significantly to public understanding of the operations or activities of the government.'" *Dep't of Def. v. FLRA*, 510 U.S. 487, 495 (1994) (quoting *Reps. Comm.*, 489 U.S. at 775); *see also Lepelletier v. FDIC*, 164 F.3d 37, 46-47 (D.C. Cir. 1999) ("[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would

she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to.").  "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose." *Beck v. Dep't of Just.*, 997 F.2d 1489, 1492 (D.C. Cir. 1993).  Plaintiff bears the burden of demonstrating that the release of the withheld information would serve this interest.  *See Carter v. Dep't of Com.*, 830 F.2d 388, 391-92 & nn.8 & 13 (D.C. Cir. 1987).

The FOIA requires agencies invoking an exemption not only to justify the exemption but to show that the "agency reasonably foresees that disclosure would harm an interest protected by an exemption.  5 U.S.C. § 552(a)(8)(A)(i)(I).  Where an agency invokes an exemption protecting against unwarranted invasion of privacy, however, "an agency need not establish much more than the fact of disclosure to establish foreseeable harm." *Ecological Rights Found. v. U.S. Envtl. Protec. Agency*, 541 F. Supp. 3d 34, 65 (D.D.C. 2021).

Additionally, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b). "Affidavits attesting to the agency's 'line-by-line review of each document withheld in full' and the agency's determination 'that no documents contained releasable information which could be reasonably segregated from the nonreleasable portions,' in conjunction with a *Vaughn* index describing the withheld record, suffice." *Ecological Rights Found. v. U.S. Envtl. Protec. Agency*, 541 F. Supp. 3d 34, 66 (D.D.C. 2021) (citing *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002)).

Summary judgment in FOIA cases may be awarded "based solely on the information provided in [agency] affidavits or declarations when the affidavits or declaration describe 'the justifications for non-disclosure with reasonably specific detail, demonstrate that the information

withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Fischer*, 596 F.Supp.2d at 42 (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).  Typically, the agency's declarations or affidavits are referred to as a *Vaughn* index, after the case of *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974).  The purpose of a *Vaughn* index is "to permit adequate adversary testing of the agency's claimed right to an exemption." *NTEU v. Customs*, 802 F.2d 525, 527 (D.C. Cir. 1986) (citing *Mead Data Central v. United States Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977), and *Vaughn*, 484 F.2d at 828).  Thus, the index must contain "an adequate description of the records" and "a plain statement of the exemptions relied upon.

### ii. Defendant Properly Invoked Exemption 6 to Withhold Personally Identifying Information

In the records provided to Plaintiff, the Coast Guard redacted and withheld the privacy information identified in the *Vaughn* index, consisting only of the names, ranks, rates, and personally identifying information of junior personnel that would constitute an unwarranted invasion of privacy if released.  Judge Decl. ¶ 36.  Coast Guard personnel conducted a line-by-line review to ensure that only personally identifying information—which would foreseeably cause an unwarranted invasion of the individuals' privacy and subject these individuals to unwanted contact, harassment, and violence—was withheld and all other information was released. *Id*. ¶ 40.

Individuals have a legitimate privacy interest in keeping their personal contact information and identities from being disclosed to the public. *Id*. ¶ 37.  In general, individuals have an interest in protecting their personally identifying information to protect against identity theft or fraud. *Id*.  Coast Guard personnel, in particular, are associated with the Department of Homeland Security ("DHS"), which has multiple sensitive law enforcement and intelligence gathering missions. *Id*. ¶

37.  DHS personnel and their family members are vulnerable to unwanted contact, harassment, or violence from individuals who maliciously acquire and disseminate this type of personally identifying information, so these personnel have a substantial interest in having their personally identifying information protected. *Id*. Additionally, the Deepwater Horizon incident and response are well-known and highly publicized events, so these individuals are at particularly heightened risk of unwanted contact. *Id.*

Moreover, Plaintiff has not pointed to any evidence that disclosure of the personally identifying information contained in the records would shed light on agency functions or that the incremental public interest in such information is sufficient to outweigh the privacy interests at stake.  *See Banks*, 813 F. Supp. 2d at 143-44 (citing *SafeCard*, 926 F.2d at 1206).  Thus, the Court "need not linger over the balance; something, even a modest privacy interest, outweighs nothing every time."  *Horner*, 879 F.2d at 879.

In sum, because Defendant released all responsive records to Plaintiff and redacted only the personally identifiable information of junior Coast Guard employees, disclosure of which "would constitute a clearly unwarranted invasion of personal privacy," Defendant properly withheld information under FOIA Exemption 6.  Defendant correctly invoked Exemption 6 to withhold the personal information described above and is entitled to summary judgment on their withholdings.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment should be granted.

Dated: May 24, 2022
    Washington, D.C.

            Respectfully submitted,

            MATTHEW M. GRAVES, D.C. Bar #481052
            United States Attorney

            BRIAN P. HUDAK
            Chief, Civil Division

            By:_____/s/_____
            PATRICIA MCBRIDE
            Assistant United States Attorney
            Judiciary Center Building
            601 D Street, N.W. B Civil Division
            Washington, D.C.  20530
            Telephone: (202) 252-2562