UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE DOWNS LAW GROUP, P.A.

*Plaintiff,*

v.

UNITED STATES COAST GUARD,

*Defendant.*

Civil Action No. 21-2407 (RBW)

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

I.      INTRODUCTION ............................................................................................. 1

II.     BACKGROUND AND PROCEDURAL POSTURE ................................. 3

III.    STANDARD OF REVIEW ............................................................................. 6

IV.     DEFENDANT FAILED TO CONDUCT AN
        ADEQUATE SEARCH FOR RECORDS ................................................... 9

        A.      Defendant requested Plaintiff narrow its
                first request. Plaintiff refused ........................................... 10

        B.      Defendant did not request Plaintiff narrow
                its second request. ................................................................ 12

        C.      Defendant did not conduct an adequate
                search for records. ................................................................ 14

V.      DEFENDANT IMRPOERLY WITHHELD RECORDS BY
        INVOKING EXEMPTION 6 .......................................................................... 19

        A.      These records are neither medical, personnel,
                nor other similar files. ........................................................ 19

        B.      There is no privacy interest in the disclosure
                of awards. ................................................................................ 21

        C.      Coast guard member lives can still be saved by the
                disclosure of these records. There is a substantial
                public interest in protecting their lives. ......................... 31

VI.     CONCLUSION ................................................................................................. 34

# TABLE OF AUTHORITIES

**Cases**

*Bigwood v. USAID,*
    484 F. Supp. 2d 68 (D.D.C. 2007)............................................................................ 27

*Ecological Rights Found. v. EPA,*
    541 F. Supp. 3d 34 (D.D.C. 2021)............................................................................ 32

*Habeas Corpus Resource Ctr. v. Dep't of Justice,*
    2008 WL 5000224 (N.D. Cal. Nov. 21, 2008) ........................................................ 26

*Winn v. Dep't of Justice,*
    2019 WL 464788 (D.D.C. Feb. 6, 2019) ................................................................. 17

*Accuracy in Media, Inc. v. NTSB,*
    2006 WL 826070 (D.D.C. Mar. 29, 2006) ................................................................. 6

*Allen v. CIA,*
    636 F.2d 1287 (D.C. Cir.1980)........................................................................... 12, 33

*Ancient Coin Collectors Guild v. U.S. Dep't of State,*
    641 F.3d 504 (D.C. Cir. 2011).................................................................................. 10

*Associated Press v. DOD,*
    554 F.3d 274 (2d Cir. 2009) ..................................................................................... 31

*Barnard v. DHS,*
    598 F. Supp. 2d 1 (D.D.C. 2009).............................................................................. 21

*Charles v. Office of the Armed Forces Medical Examiner,*
    935 F.2d 86 ............................................................................................................... 23

*Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.,*
    2014 WL 12780046 (D.D.C. Feb. 14, 2014) ............................................................. 5

*Citizens for Responsibility v. Fed. Election Com'n,*
    711 F.3d 180 (2013) ................................................................................................... 6

*Clemente v. FBI,*
    2014 WL 299823 (D.D.C. Jan. 27, 2014).................................................................. 5

*Cleveland v. US Dep't of State,*
    128 F. Supp. 3d 284 (2015) ..................................................................................... 30

*CNA Holdings, Inc. v. DOJ,*
    2008 WL 2002050 (N.D. Tex. May 9, 2008) .......................................................... 24

*Consumer Fed'n of Am. v. Dep't of Agric.,*
    455 F.3d 283 (D.C. Cir. 2006).................................................................................... 8

*Consumers' Checkbook Ctr. for the Study of Servs. v. HHS,*
    554 F.3d 1046 (D.C. Cir. 2009)................................................................................ 19

*Core v. USPS,*
    730 F.2d 946 (4th Cir. 1984) ................................................................................... 23

*Cowdery, Ecker & Murphy, LLC v. Dep't of Interior,*
    511 F. Supp. 2d 215 (D. Conn. 2007)...................................................................... 26

*Ctr. for Biological Diversity v. Off. of the U.S. Trade Representative,*
    450 F. App'x 605 (9th. Cir. 2011) ........................................................................... 16

*Davis v. DOJ,*
    968 F.2d 1276 (D.C. Cir. 1992)................................................................................ 24

*Def. of Animals v. NIH,*
  543 F. Supp. 2d 83 (D.D.C. 2008) ............................................................................ 7

Defendant erroneously relies on *Dep't of State v. Wash. Post Co.*, for its Exemption 6
  analysis.,
  56 U.S. (1982) ......................................................................................................... 23

*Department of State v Washington Post,*
  456 U.S. 595 (1982) .......................................................................................... 20, 23

*Dep't of Interior v. Klamath Water Users Protective Ass'n,*
  532 U.S. 1 (2001) ..................................................................................................... 2

*Dep't of Justice v. Reporters Committee Reporters Comm. for Free Press,*
  489 U.S. 749 (1989) ........................................................................................ Passim

*Dep't of State v. Ray,*
  502 U.S. 164 (1991) .................................................................................................. 7

*DiBacco v. Dep't of Army,*
  926 F.3d 827 (D.C. Cir. 2019) .................................................................................. 7

*EPIC v. Dep't of Justice,*
  416 F. Supp. 2d 30 (D.D.C. 2006) ........................................................................... 4

*Eddington v. U.S. Dep't of Just.,*
  2022 WL 218562 (D.D.C. Jan. 25, 2022) ................................................................ 7

*EPIC v. Dep't of Justice,*
  933 F. Supp. 2d 42 (D.D.C. 2013) ........................................................................... 5

*FLRA v. U.S. Dep't of Commerce,*
  962 F. 2d 1055 (D.C. Cir. 1992) ............................................................................. 23

*FLRA v. VA,*
  958 F.2d ............................................................................................................. 9, 31

*Goland v. CIA,*
  607 F.2d 339 (D.C.Cir.1979) ................................................................................. 10

*Gonzales v. United States,*
  298 F. Supp. 3d 1 (D.D.C. 2018) ........................................................................... 10

*Gordon v. FBI,*
  390 F. Supp. 2d 897 (N.D. Cal. 2004) ................................................................... 21

*Gordon v. FBI,*
  388 F. Supp. 2d 1028 (N.D. Cal. 2005) ................................................................. 21

*Hall v. U.S. Dep't of Justice,*
  552 F. Supp. 2d 23 (D.D.C. 2008) ......................................................................... 24

*Hidalgo v. FBI,*
  344 F.3d 1256 (D.C. Cir. 2003) ............................................................................... 6

*Holt v. U.S. Dep't of Just.,*
  734 F. Supp. 2d 28 (D.D.C. 2010) ......................................................................... 11

*Houser v. Church,*
  486 F.Supp.3d 117 (D.D.C. 2020) .......................................................... 15, 16, 20, 21

*Hunton & Williams LLP v. EPA,*
  346 F. Supp. 3d 61 (D.D.C. 2018) ......................................................................... 19

*John Doe Agency v. John Doe Corp.,*
  493 U.S. 146 (1989) .................................................................................................. 8

*Judicial Watch, Inc. v. Dep't of Navy*,
   25 F. Supp. 3d 131 (D.D.C. 2014)......................................................................7

*Judicial Watch, Inc. v. Food Drug Admin.*,
   449 F.3d 141 (D.C. Cir. 2006).........................................................................30

*Judicial Watch, Inc. v. U.S. Secret Serv.*,
   726 F.3d 208 (D.C. Cir. 2013).........................................................................8

*Kowalczyk v. Dep't of Justice*,
   73 F.3d 386 (D.C. Cir. 1996)..........................................................................17

*Leadership Conf. on Civil Rights v. Gonzales*,
   404 F. Supp. 2d 246 (D.D.C. 2005)................................................................5

*Long v. OPM*,
   2007 WL 2903924 (N.D.N.Y. Sept. 30, 2007)..............................................27

*McGehee v. CIA*,
   697 F.2d 1095 (D.C.Cir.1983)............................................................10, 11, 12

*Military Audit Project v. Casey*,
   656 F.2d 724 (D.C.Cir.1981)..........................................................................11

*Moore v. Aspin*,
   916 F. Supp. 32 (D.D.C. 1996).......................................................................7

*Morley v. CIA*,
   508 F.3d 1108 (D.C. Cir. 2007)................................................................23, 32

*Multi Ag Media LLC v. USDA*,
   515 F.3d 1224 (D.C. Cir. 2008)........................................................19, 21, 22

*Nat'l Archives & Records Admin. v. Favish*,
   541 U.S. 157 (2004).........................................................................8, 22, 31, 33

*Nat'l Ass'n of Home Builders v. Norton*,
   309 F.3d 26 (D.C. Cir. 2002).........................................................................19

*Nat'l Ass'n of Retired Fed. Employees v. Horner*,
   879 F.2d 873 (D.C. Cir. 1989)............................................................3, 19, 22

*New Orleans Workers' Ctr. for Radical Just. v. ICE*,
   373 F. Supp. 3d 16 (D.D.C. 2019)...........................................................15, 17

*Niagara Mohawk Power Corp. v. DOJ*,
   169 F.3d 16 (D.C. Cir.1999)...........................................................................24

*Nurse v. Sec'y of the Air Force*,
   231 F. Supp. 2d 323 (D.D.C. 2002)................................................................5

*Oglesby v. U.S. Dep't of the Army*,
   920 F.2d 57 (D.C. Cir. 1990).....................................................................6, 10

*Payne Enters. v. United States*,
   837 F.2d 486 (D.C. Cir. 1988).........................................................................4

*People for the Am. Way v. National Park Serv.*,
   503 F. Supp. 2d 284 (D.D.C. 2007)..............................................................27

*Pinson v. DOJ*,
   145 F. Supp. 3d 1 (D.D.C. 2015)....................................................................6

*Schoenman v. FBI*,
   573 F. Supp. 2d 119 (D.D.C. 2008)..............................................................22

*Schoenman v. FBI*,
   575 F. Supp. 2d 136 (D.D.C. 2008)..............................................................22

iv

*Schoenman v. FBI,*
    576 F. Supp. 2d 3 (D.D.C. 2008).................................................................22
*Stern v. SBA,*
    516 F. Supp. 145 (D.D.C. 1980).................................................................20
*Trentadue v. Integrity Comm.,*
    501 F.3d 1215 (10th Cir. 2007).................................................................25
*Truitt v. U.S. Dep't of State,*
    897 F.2d 540 (D.C. Cir. 1990).................................................................15
*U.S. Department of Justice v. Tax Analysts,*
    492 U.S. 136, (1989) ...........................................................................2, 8
    253 F.R.D. 44 (D. Conn. 2008)................................................................22
*Wash. Post Co. v. HHS,*
    690 F.2d 252 (D.C. Cir. 1982)................................................22, 23, 31, 32
*Waterman v. IRS,*
    288 F. Supp. 3d 206 (D.D.C. 2018).....................................................29, 30
*Weisberg v. Dep't of Justice,*
    745 F.2d 1476 (D.C. Cir. 1984)................................................................10
*Weisberg v. United States Dep't of Justice,*
    705 F.2d 1344 (D.C. Cir. 1983)................................................................10
*Wilbur v. CIA,*
    355 F.3d 675 (D.C. Cir. 2004)...................................................................6
*Wildlands CPR v. U.S. Forest Serv.,*
    558 F. Supp. 2d 1096 (D. Mont. 2008).......................................................6
*Wildlife v. U.S. Border Patrol,*
    623 F. Supp. 2d 83 (D.D.C. 2009)..............................................................7
*Willis v. DOJ,*
    581 F. Supp. 2d 57 (D.D.C. 2008)..............................................................7

**Statutes**
5 U.S.C. § 552.............................................................................1, 15, 16
5 U.S.C. § 552(a)(3)(A)........................................................................8
5 U.S.C. § 552(a)(4)(B).....................................................................7, 8
5 U.S.C. § 552(a)(6)(A)(i)......................................................................6
5 U.S.C. § 552(a)(6)(A)(ii)...................................................................10
5 U.S.C. § 552(a)(6)(C).........................................................................5
5 U.S.C § 552(b)(6) ........................................................................2, 19
Pub. L. No. 105-277, 112 Stat. 2681 ......................................................28

**Rules**
Fed. R. Civ. P. 56(a) ...........................................................................16

**Regulations**

5 C.F.R. § 293.311 (a)..........................................................................27
5 C.F.R. § 293.311 (2018) ...................................................................27

# I. INTRODUCTION

Plaintiff brings this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, against Defendant Coast Guard, a Federal agency and component of the United States Department of Homeland Security. This matter is before the Court on Defendant's Motion for Summary Judgment ("Def.'s Mot."), ECF No. 12, and Plaintiff's Cross-Motion for Summary Judgment. For the reasons discussed below, the Court should grant Plaintiff's Cross-Motion and deny Def.'s Mot.

The records requested by Plaintiff concern the BP Deepwater Horizon Oil Spill (DHOS) in 2010 and 2011. The BP DHOS left a legacy of destruction to the environment of the gulf coast and destroyed thousands of businesses related to recreation and commercial fishing in the gulf region. That story is known to millions of Americans. What is less known are the deaths and latent injuries caused by the oil itself and chemicals used to clean up the oil spill. Thousands of valiant Coast Guard members from all over the country, both active and on reserve, put their lives on the line to clean up the oil spill. This case is about an effort to inform and educate the Coast Guard members of the dangers they now face. The Coast Guard leadership has blocked knowledge, information, and records that are crucial to saving Coast Guard member lives.

Defendant failed to provide Plaintiff with the records requested despite ample opportunity, and legal obligation, to do so. The Coast Guard did provide 1,180 pages of broadly redacted records. The Court should order Defendant to unredact these records. Coast Guard member lives can still be saved by the disclosure of these records. There is a substantial public interest in protecting their lives. This Court should grant summary judgment in favor of Plaintiff

as to Defendant's bifurcated failures to conduct an adequate search and properly disclose records.

The purpose of the FOIA is "'to open agency actions to the light of public scrutiny'" and the policy is "one of broad disclosure." *Dep't of Justice v. Reporters Committee Reporters Comm. for Free Press,* 489 U.S. 749, 772 (1989).

Plaintiff never narrowed its requests. In fact, Plaintiff explicitly refused to narrow its first request. Years into this process, when Defendant requested another narrowing, Plaintiff refused, and clarified the purpose for which these requests were made in an attempt to overcome the government's concern about clearly unwarranted invasions of personal privacy. Instead, Defendant, in bad faith, misrepresented Plaintiff's clarification as a narrowing in an attempt to ease its burden of production.

Defendant halted its search for responsive records in both requests following its misrepresentation of Plaintiff's clarification of Plaintiff's first request. In doing so, Defendant failed to search additional places such as email where unofficial awards may be present including, for example, Sailor-of-the-Quarter awards or command coin awards. Declaration of Captain Lincoln D. Stroh, USCG (Retired) ("Stroh Decl.") ¶¶ 10, 14, 21; Ex. 109. Defendant improperly applied FOIA Exemption 6 to Plaintiff's FOIA requests.

FOIA's general philosophy is that of full agency disclosure, and its exemptions are exclusive, and must be narrowly construed. *See, e.g. U.S. Department of Justice v. Tax Analysts*, 492 U.S. 136, 151, (1989); *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 2 (2001).

FOIA's Exemption 6 requires that the document to be withheld be a personnel, medical, or other similar file. 5 U.S.C § 552(b)(6). If this threshold question is met, a court must evaluate

whether the disclosure implicates a significant privacy interest. *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989).

Finally, even if a significant privacy interest exists, a court must balance whether the public's interest in disclosure overcomes that privacy interest. *Id.*

Here, Plaintiff's request is not for personnel, medical or other similar files. Plaintiff's request was for awards. Even if the records at issue are personnel, medical, or other similar files, the privacy interest here is *de minimis* to non-existent, and the public's interest in disclosure is great, as disclosure would save the lives of Coast Guard members. Defendant's regulations and practice make clear that these records are public and should be disclosed. This Court should immediately order Defendant to unredact the names of Coast Guard members and to conduct an adequate search.

## II. BACKGROUND AND PROCEDURAL POSTURE

Declarant for Plaintiff, Craig T. Downs, Esq., underscores the gravity associated with the release of these records throughout his declaration, and the lethal consequences that will flow from a failure to disclose the names associated with these awards. Mr. Downs stated "[O]ur law firm represents clients in personal injury and wrongful death actions . . . as a result of exposure to crude oil and toxic dispersants used by the United States Coast Guard during the cleanup of the British Petroleum (BP) Deepwater Horizon Oil Spill (DHOS) which occurred in the Gulf of Mexico beginning on April 20, 2010." Downs Decl. ¶ 4.

Mr. Downs further stated "Numerous studies have been conducted showing the cardiological, neurological, ophthalmological and respiratory impacts of crude oil and the dispersants used . . . in the cleanup." Downs Decl. ¶ 5. Mr. Downs cites a survey which found

that "over half of all members who responded were exposed to crude oil, and nearly one quarter

were exposed to dispersants." Downs Decl. ¶ 6. Mr Downs explained that

> Many of the Coast Guard members who were exposed to these chemicals do not
> associate their injury with their work in the Coast Guard. The injuries they've
> sustained, called "latent injuries," do not show up immediately after exposure.
> The injuries are completely different from an automobile accident where the
> victim knows immediately that they are the victim of an automobile accident.
> Instead, it may take years for the injuries to present."

Downs Decl. ¶ 7.

Plaintiff's first FOIA request, submitted on June 14, 2020, included, but was not limited

to, all records showing "approval of, commendation for, medals for, approbation for, [or] letters

of commendation for" active duty and auxiliary members who assisted in the cleanup of the BP

DHOS. Ex. 101. In its June 18, 2020 acknowledgement, Defendant assigned the first request

FOIA number 2020-CGFO-01820. ECF 1-18 at 3.

Plaintiff made three Estimated Completion Date (ECD) requests for the first request. ECF

1 at 4. Defendant did not respond to these requests as required by law. *Id*. Defendant asked

Plaintiff to narrow Plaintiff's first request. Downs Decl. ¶ 10. Plaintiff declined to narrow its first

request and continued to seek the records originally requested. *Id.* ¶ 11.

After more than a year, Defendant had not provided responsive records nor made a final

determination to this request. ECF 1 at 6. "'[U]nreasonable delays in disclosing non-exempt

documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent

[such] abuses.'" *EPIC v. DOJ*, 416 F. Supp. 2d 30, 35 (D.D.C. 2006) (quoting *Payne Enters. v.

United States*, 837 F.2d 486, 494 (D.C. Cir. 1988)).

A court may require agencies to process documents on a particular timeline. *See EPIC*

416 F. Supp. 2d at 38 (D.D.C. 2006) (holding that "courts have the authority to impose concrete

deadlines on agencies that delay the processing of requests meriting expedition" (citing

*Leadership Conf. on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260-61 (D.D.C. 2005))). *See also Clemente v. FBI*, No. 13-108, 2014 WL 299823, at *5 (D.D.C. Jan. 27, 2014) (setting deadlines for processing documents); *EPIC v. Dep't of Justice*, 933 F. Supp. 2d 42, 50 (D.D.C. 2013); *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, No. CV 12-1491, 2014 WL 12780046 at *2 (D.D.C. Feb. 14, 2014).

Plaintiff's second FOIA request, submitted on August 5, 2020, included, but was not limited to, all records showing "approval of, commendation for, medals for, approbation for, [or] letters of commendation for" reservist, active duty, and auxiliary members who assisted in the cleanup of the BP Deepwater Horizon Oil Spill. Downs Decl. ¶ 12. This request encompassed all records subject to the first request, and added an additional class of records. Defendant assigned the second request FOIA number 2020-CGFO-02512 on September 4, 2020. ECF 1-12 at 2.

On Plaintiff's second FOIA request, it made one ECD request which was not answered as required by law. Downs Decl. ¶ 13; Ex. 105. Defendant failed to provide responsive records to Plaintiff's second request for over a year. Downs Decl. ¶ 14. *See Ass'n of National Advertisers, Inc. v. FTC*, 38 Ad.L.2d 643, 645 (D.D.C. April 1, 1976) (production of additional documents after six-month delay "presents a substantial issue of the completeness of the agency search").

Plaintiff constructively exhausted its administrative remedies in this case. FOIA permits requesters to treat an agency's failure to comply with its time limits as "constructive," exhaustion of administrative remedies. *See* 5 U.S.C. § 552(a)(6)(C); s*ee also Nurse v. Sec'y of the Air Force*, 231 F. Supp. 2d 323, 328 (D.D.C. 2002) ("The FOIA is considered a unique statute because it recognizes a constructive exhaustion doctrine for purposes of judicial review upon the expiration of certain relevant FOIA deadlines").

"Exhaustion of administrative remedies is generally required before seeking judicial review" under FOIA. *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) (per curiam). Exhaustion allows "the agency [] an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Id.* (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 61 (D.C. Cir. 1990)). It is not a jurisdictional requirement, *Hidalgo v. FBI,* 344 F.3d 1256, 1258 (D.C. Cir. 2003), but instead is a prudential consideration. *Wilbur*, 355 F.3d 675, 677 (per curiam).

When an agency "fails to comply with the applicable time limit provisions" of tFOIA, the requester is deemed to have exhausted its administrative remedies and can seek immediate judicial review, even though the requester has not filed an administrative appeal. 5 U.S.C. § 552(a)(6)(A)(i). *See, e.g.*, *Pinson v. DOJ*, 145 F. Supp. 3d 1, 10 (D.D.C. 2015) (finding constructive exhaustion as to some of plaintiff's claims due to agency's failure to respond to certain requests before requester filed suit); *Accuracy in Media, Inc. v. NTSB*, No. 03-0024, 2006 WL 826070, at *6 (D.D.C. Mar. 29, 2006) (finding constructive exhaustion because plaintiff filed its FOIA Complaint seven months after National Transportation Safety Board (NTSB) received its request and before NTSB complied with it).

"[I]f an agency does not adhere to certain statutory timelines in responding to a FOIA request, the requester is deemed by statute to have fulfilled the exhaustion requirement." *Citizens for Responsibility v. Fed. Election Com'n*, 711 F.3d 180 (2013). *See also Wildlands CPR v. U.S. Forest Serv.*, 558 F. Supp. 2d 1096, 1102-03 (D. Mont. 2008) (finding constructive exhaustion where agency did not timely adjudicate administrative appeal).

### III. STANDARD OF REVIEW

This Court should grant summary judgment in favor of Plaintiff as Defendant failed to conduct an adequate search and improperly withheld records.

This Court is required to conduct a *de novo* review of the record when evaluating a motion for summary judgment, and the responding Federal agency bears the burden of proving that it has complied with all of its obligations under FOIA. *See* 5 U.S.C. § 552(a)(4)(B); *In Def. of Animals v. NIH*, 543 F. Supp. 2d 83, 92–93 (D.D.C. 2008). In an action under FOIA, the burden of persuasion is on the government agency, and doubts are to be resolved in favor of disclosure. *See 5 U.S.C. § 552(a)(4)(B). See also DiBacco v. Dep't of Army,* 926 F.3d 827, 834 (D.C. Cir. 2019) (noting that agency bears burden of proof to justify withholdings); *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (explaining that it is the agency's burden "to justify the withholding of any requested documents").

The Court must analyze all underlying facts in the light most favorable to the FOIA requester, *see Willis v. DOJ*, 581 F. Supp. 2d 57, 65 (D.D.C. 2008), and it may grant summary judgment to an agency only after the agency establishes that it has "fully discharged its [FOIA] obligations." *Eddington v. U.S. Dep't of Just.*, No. CV 19-1991, 2022 WL 218562 at *2 (D.D.C. Jan. 25, 2022) (quoting *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996)).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Judicial Watch, Inc. v. Dep't of Navy*, 25 F. Supp. 3d 131, 136 (D.D.C. 2014) (quoting *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). *See also Eddington*, No. CV 19-1991, 2022 WL 218562 at *2.

"In FOIA cases, '[s]ummary judgment may be granted on the basis of agency affidavits' when those affidavits 'contain reasonable specificity of detail rather than merely conclusory statements,' and when 'they are not called into question by contradictory evidence in the record

or by evidence of agency bad faith.'" *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (quoting *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006)). Conclusory statements, contradictory evidence, and evidence of agency bad faith are all three present in this case.

Under FOIA "the dominant objective [] is disclosure, and exemptions are to be narrowly construed." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). The burden remains on the agency to justify any withholdings under Exemption 6, and the presumption in favor of disclosure under Exemption 6 is as strong as any other exemptions. *See Dep't of Justice v. Tax Analysts,* 492 U.S. 136, 142 n.3 (1989) ("The burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not 'agency records' or have not been 'improperly' 'withheld.'"); *Reporters Comm. for Freedom of the Press*, 489 U.S. at 755 (1989) (stating that "unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action'" (citing 5 U.S.C. § 552(a)(4)(B))).

Defendant's delay in releasing records requested by Plaintiff is illegal under FOIA. FOIA states "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

The Supreme Court has made clear, public awareness of the government's actions is "a structural necessity in a real democracy." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004). FOIA's purpose is to encourage public disclosure of information in the possession of

Federal agencies so that the people may know what their government is up to. *FLRA v. VA*, 958 F.2d 503, 508 (2d Cir. 1992).

## IV. DEFENDANT FAILED TO CONDUCT AN ADEQUATE SEARCH FOR RECORDS

Plaintiff's first request was submitted on June 14, 2020, ECF 1-5 at 2. On this request, Plaintiff made three ECD requests. ECF 1 at 4. Defendant did not respond to these ECD requests as required by law. *Id.* Defendant asked Plaintiff to narrow the first request. Downs Decl. ¶ 10. Plaintiff declined to narrow its request and continued to seek the records originally requested. *Id.* ¶ 12. After well over a year, Defendant had not provided responsive records or made a final determination. *Id.* ¶ 14.

Plaintiff's second request was submitted on August 5, 2020. *Id.* ¶ 12. Plaintiff made one ECD request, but it was not answered as required by law. *Id.* ¶ 13; Ex. 105. After over a year, Defendant failed to provide responsive records, forcing Plaintiff to seek judicial review. On September 13, 2021, following Defendant's complete withholding of records, Plaintiff filed this judicial review to receive the records to which it is entitled. Downs Decl. ¶ 14. Defendant's delay in releasing records requested by Plaintiff is illegal under FOIA.

On January 12, 2022, just under four months after the filing of this action, and 19 months since the first request, Defendant produced 1,180 pages of responsive records. ECF 9 at 1. Defendant redacted hundreds of pages of records under FOIA Exemption 6, denying Plaintiff's right to receive the information contained in those records. This Court should immediately remedy this illegal withholding.

Defendant failed to search for records concerning auxiliarist awards, despite Plaintiff's lawful request to do so. *Id.* Furthermore, there is evidence that formal awards to auxiliarists exist. Ex.109.

An agency, when responding to a FOIA request, must conduct a reasonable search for responsive records. *See Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). *See also Weisberg v. United States Dep't of Justice*, 705 F.2d 1344, 1352 (D.C. Cir. 1983). "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (citations and internal quotation marks omitted). *See also Gonzales v. United States*, 298 F. Supp. 3d 1, 3 (D.D.C. 2018).

The adequacy of the search is judged by a standard of reasonableness and depends upon the facts of each case. *McGehee v. CIA*, 697 F.2d 1095, 1100–01 (D.C.Cir.1983), *modified on petition for rehearing in other respects*, 711 F.2d 1076, 1077 (D.C.Cir.1983). In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith. *Goland v. CIA*, 607 F.2d 339, 352 (D.C.Cir.1979) (per curiam), cert. denied, 445 U.S. 927 (1980). *See also Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The reasonableness of an agency's search depends upon the facts of each case. *Weisberg*, 705 F.2d at 1351.

FOIA states, in pertinent part, that "The 20-day period shall not be tolled by the agency except— (I) that the agency may make one request to the requester for information and toll the 20-day period while it is awaiting such information that it has reasonably requested from the requester under this section." 5 U.S.C. § 552(a)(6)(A)(ii). Plaintiff here responded promptly that it did not narrow its first request. Downs Decl. ¶ 11; Ex. 103. There was no agency request for clarification on Plaintiff's second request.

### A.  Defendant requested Plaintiff narrow its first request. Plaintiff refused.

Defendant argues that Plaintiff "ultimately narrowed" its first request. Defendant's Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem.") at 2. Plaintiff never narrowed its two requests. Downs Decl. ¶ 15. Declarant for Plaintiff, Mr. Downs, noted that "On July 15, 2020, Ms. Ackerson, who was working for Defendant on my first request, asked if [Plaintiff] was willing to narrow [Plaintiff's] request to not include the names of Coast Guard members who received awards. The email making this request is attached as Exhibit 102. On August 3, 2020, I directed my attorney to send an email saying that my firm would not narrow our request and that we continued to seek the awards with the names of Coast Guard personnel included. The email is attached as Exhibit 103." Downs Decl. ¶¶ 10-11.

"In a FOIA case, the Court may grant summary judgment based on information provided in an agency's affidavits or declarations when they 'describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C.Cir.1981). *See also Holt v. U.S. Dep't of Just.*, 734 F. Supp. 2d 28, 35-36 (D.D.C. 2010).

The Court of Appeals for the District of Columbia Circuit held that the "cumulative weight of [] evidence of bad faith is enough to vitiate the credit to which agency affidavits are ordinarily entitled" where agency "took almost two and one-half years before . . . [Defendant] processed [] [Plaintiff's] reasonably straightforward request," and did not do so until compelled by court order, and where Defendant "failed to disclose the fact that it was using . . . a cut-off date." *McGehee v. CIA*, 697 F. 2d 1095 (1983).

11

Here, as in *McGehee*, *supra*, there is considerable evidence in the record of agency bad faith as Defendant misrepresented a clarification in an uncounseled phone as a narrowing of its request. Plaintiff did not narrow its request orally or in writing.

Agency bad faith is relevant because it undermines the credibility of the agency's statements in its affidavits. *See Allen v. CIA*, 636 F.2d 1287 (D.C. Cir.1980). *See also Horsehead Indus. v. EPA*, No. 94-1299, slip op. at 4 n.2 (D.D.C. Jan. 3, 1997) (ruling that "[b]y construing the FOIA request narrowly, [agency] seeks to avoid disclosing information").

Defendant's bad faith tactics, whether at the request stage, or at the judicial review stage, are not consistent with Defendant's statutory obligations. The Court of Appeals for the District of Columbia Circuit has held that "Where there is evidence of bad faith on the part of the agency, the representations of the agency lose all trustworthiness." *Allen*, 636 F. 2d at 1298.

**B.   Defendant did not request Plaintiff narrow its second request.**

Defendant stated that "Multiple offices were initially contacted to respond to the original, broader request." Def's Mem. at 9-10. It is unclear which single "broader request" this refers to, as there are two requests at issue in this case seeking nearly identical records, and neither have been narrowed as the record demonstrates.

Mr. Downs, declarant for Plaintiff, stated that "On October 26, 2021, I had an uncounseled phone call with Defendant in order to attempt to clarify my first request and avoid further litigation on this issue. Following that meeting, I sent an email to the Coast Guard where I again said that I was 'clarify[ing]' the purpose of the request. [Document 12-1 at 22]. [Plaintiff] did not narrow the request and continued to seek the records from both unamended requests." Downs Decl. ¶ 15. Plaintiff's clarification email shown in ECF No. 12-1 (Defendant's exhibit)

contained a subject line which only pertained to the first request, and no email was sent regarding the second request.

Defendant attempts to obfuscate the scope of Plaintiff's second request. In Defendant's final response, provided after this Judicial Review was initiated, Defendant begins by stating "This letter is the final response to your Freedom of Information Act ("FOIA") requests . . . ." ECF No. 12-1 at 24. The plural "requests" used at the beginning of the page stands in stark contrast to language at the bottom of the page which reads "In a phone conversation with District Eight ("D8") on October 26, 2021, and as confirmed in your e-mail following the conversation, you ultimately narrowed your request . . . ." *Id*. This email only applied to the first request as evidenced by the subject line of the email and was not a narrowing. The word narrowing is never used in that email exchange. The only word used is "clarify." *Id*.

The swapping from plural to singular is mirrored in Defendant's Memorandum which begins "*a. Plaintiff's Original FOIA Requests*" and starts "Plaintiff originally submitted two FOIA requests. . . ." ECF No. 12 at 14. Just one page later in its memorandum Defendant wrote "*b. Plaintiff Narrowed the Request*" and discussed how "Plaintiff narrowed the request" in the singular. *Id*. at 15. Despite this not being a narrowing, it also did not apply to the second request. Plaintiff's first request (which was subject of the clarification) sought records detailed *supra*, for "all Coast Guard personnel, whether active duty or auxiliary. . . ." Any co-mingling of the clarification of the first request with the second request is not a proper understanding of the history of the requests.

After Defendant informed Plaintiff that its first request did not include reservists, Plaintiff's submitted a second request which sought the exact same records as the first request except for "all Coast Guard personnel, whether reservist, active duty or auxiliary. . . ." As the

13

records sought by the second request encompass all those sought by the first request, the alleged "narrowing" of the first request is irrelevant. Finally, reference to a "narrowing" (actually a clarification) seemingly in regard to the second request should be considered additional evidence of agency bad faith.

Defendant stated that the "Office of Governmental and Public Affairs was not likely to maintain records responsive to the request, as narrowed." Def.'s Mem. at 10. Again, Plaintiff did not narrow its first request with its "clarif[ication]," and no clarification was given nor did Defendant request a clarification or narrowing in Plaintiff's second request.

Plaintiff argues that Defendant's misrepresentation of Plaintiff's clarification signals the agency's *mala fides* and impugns Mr. Judge's declaration for Defendant. This is demonstrated by a substantial discrepancy between Defendant's actions and words. *See generally* Office of Information Policy Guidance: *The Importance of Good Communication with FOIA Requesters* (posted 3/1/2010) (explaining that "good communication with requesters can also be exceedingly helpful in those instances where an agency is uncertain about the scope of what is being requested" because "[m]any times FOIA requesters do not know how agency records are organized or what might be involved in searching for the records they seek," and "[b]y engaging in a dialogue with the requester, both parties can ensure that they have a common understanding of what records are being sought").

### C. Defendant did not conduct an adequate search for records.

Defendant failed to show that it conducted an adequate search for records. Declarant for Defendant casts serious doubt on the adequacy of Defendant's search. In his declaration, Mr. Judge stated that during the search for records at the District Eight office "[LCDR Trevor Blount] located the only document covering Coast Guard members involved in the response *that*

*was marked as **complete**.*" Judge Decl. ¶ 26 (emphasis added). The phrase "that was marked as **complete**" suggests existence of records that are **incomplete**; however, **incomplete** records are still records. At a minimum, this establishes the failure of Defendant to conduct an adequate search, and viewed in the least favorable light, again demonstrates agency bad faith.

Declarant for Defendant further stated it searched five offices for records. Judge. Decl ¶¶ 18-32. Mr. Judge described the search for records saying, as an example, the "division searched their files for awards records relating to the Deepwater Horizon and coordinated with District Eight." Judge Decl. ¶ 19. Declarant does not describe which "files" were searched, nor the search terms used in each office. *See New Orleans Workers' Ctr. for Radical Just. v. ICE*, 373 F. Supp. 3d 16, 44-46 (D.D.C. 2019) (finding that, although defendant searched custodians' email accounts, hard drives, and shared servers, defendant did not explain why search terms were adequate to uncover all responsive documents and the "wide variance in the search terms used by custodians and offices with 'seemingly similar law enforcement responsibilities'").

Here, Defendant frequently does not describe which terms were used in each office let alone why those terms were adequate. Finally, while this case has focused on awards, awards are not the only subject of Plaintiff's two requests, and therefore a search for awards records alone is not an adequate search.

"The adequacy of a [Federal] agency's search [for records requested under FOIA] is measured by a standard of reasonableness, and is dependent upon the circumstances of the case." *Houser v. Church*, 486 F.Supp.3d 117, 134 (D.D.C. 2020) quoting *Truitt v. U.S. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); 5 U.S.C. § 552.

For a Federal agency to show that it satisfied its burden at the summary judgment stage, it must show that no genuine issue of material fact exists as to the adequacy of its search for

records requested under FOIA. *Houser*, 486 F.Supp.3d 117; 5 U.S.C. § 552; Fed. R. Civ. P.

56(a). The agency must also demonstrate that each agency component has conducted a search

reasonably calculated to uncover all relevant documents. *Houser*, 486 F.Supp.3d 117; 5 U.S.C. §

552; Fed. R. Civ. P. 56(a).

 A Federal agency may make a showing that it conducted a search reasonably calculated

to uncover all relevant documents pursuant to a FOIA request based on affidavits or declarations

submitted in good faith, provided that the affidavits or declarations *explain in reasonable detail

the scope and method of the search*. *Houser*, 486 F.Supp.3d 117 (emphasis added); 5 U.S.C. §

552.

 The question that a court must answer, in considering the adequacy of a Federal agency's

search for records requested under FOIA, is not whether other responsive documents may exist,

but whether the search itself was adequate. *Houser*, 486 F.Supp.3d 117; 5 U.S.C. § 552. If the

record leaves substantial doubt as to the sufficiency of a Federal agency's search for records

requested under FOIA, summary judgment for the agency is not proper. *Houser*, 486 F.Supp.3d

117; 5 U.S.C. § 552; Fed. R. Civ. P. 56(a). *See also Ctr. for Biological Diversity v. Off. of the

U.S. Trade Representative*, 450 F. App'x 605, 607 (9th. Cir. 2011) (concluding that agency's

limitation of search to documents from a particular time period was unreasonable when request

asked for older documents).

 In *Houser v. Church*, this Court ruled that Defendant's search for records requested under

FOIA was reasonable, as Defendant searched electronic databases and paper files from the

relevant agency offices, and Defendant identified and followed leads regarding where responsive

records might be located, and IRS searched for and released records that otherwise would not

have been available to a FOIA requester. *Houser*, 486 F.Supp.3d 117; 5 U.S.C.A. § 552.

For this case, Defendant misrepresented a clarification as a narrowing. In *Winn v. DOJ*, this Court ruled that the defendant did not notify the plaintiffs, at any time, prior to the filing of this action that it believed the request failed to reasonably describe the records sought, or that the request was overly broad, burdensome, or otherwise deficient. No. 17-833, 2019 WL 464788, at *1 (D.D.C. Feb. 6, 2019). This Court noted that the Defendant also did not give the plaintiffs an opportunity to address such perceived failures. *Id.*

This Court ruled that, given the defendant's failure to follow its own administrative process, the Court could not conclude that any failure by the plaintiffs to reasonably describe the records sought supports the defendant's position that it is entitled to summary judgment as to the adequacy of its search. *Id. See Kowalczyk v. Dep't of Justice,* 73 F.3d 386 (D.C. Cir. 1996). (denying summary judgment to an agency on the basis that the plaintiff's request failed to reasonably describe" the records sought, in part, because the agency's FOIA regulations imposed on the agency a duty to assist the requesters in reformulating their request if it thought that the request needed to be narrowed, but it made no effort to do so). *See also New Orleans Workers' Ctr. for Racial Just*, 373 F. Supp. 3d at 33-34.

Further, the Defendant's description of the search was seriously lacking. The Defendant often does not describe the search terms used, and it further does not describe why it omitted certain offices from the search. As detailed by Plaintiff's Declarant, Captain Stroh, many awards were presented to members at their sending units. Stroh Decl. ¶ 14. These ceremonies likely generated records that were not searched. Additionally, the formal award approval process involves form CG-1650. *Id.* The Defendant does not describe searching for these forms despite them being vital to the approval of formal awards. Defendant failed to search for CG-1650 forms, which contain a citation that "is laudatory and formalized". *Commandant Instruction*

17

M1650.25E, 15 August 2016 at 1-10; Stroh Decl. ¶ 20. A record which is laudatory and formalized is highly likely to "show approval of" the Coast Guard member's action which is a class of record requested by Plaintiff here. Ex. 101; Ex. 104.

## V. DEFENDANT IMPROPERLY WITHHELD RECORDS BY INVOKING EXEMPTION 6

Defendant eventually produced a document, months after this judicial review was filed. The document contained thousands of redacted names. *See, e.g.* Ex. 112. Nearly all information was redacted, pursuant to Defendant's erroneous interpretation of Exemption 6.

Exemption 6 of FOIA provides that an agency cannot release "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

The Court of Appeals for the District of Columbia Circuit has held that "'under Exemption 6, the presumption in favor of disclosure is as strong as can be found anywhere in the [FOIA].'" *Multi Ag Media LLC v. USDA*, 515 F.3d 1224 (D.C. Cir. 2008) at 1227 (quoting *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002)); *see also Consumers' Checkbook Ctr. for the Study of Servs. v. HHS*, 554 F.3d 1046, 1057 (D.C. Cir. 2009) (stating that FOIA's "presumption favoring disclosure . . . is at its zenith under Exemption 6"); *Hunton & Williams LLP v. EPA*, 346 F. Supp. 3d 61, 86 (D.D.C. 2018) (finding that certain names must be disclosed as no explanation for withholdings was provided).

### A.  These records are neither medical, personnel, nor other similar files.

Plaintiff did not request medical, personnel, or other similar files. A record listing award recipients from the Deepwater Horizon Oil Spill cleanup is neither a medical file, a personnel file, nor other similar file.

A three part test governs the application of Exemption 6. *See Nat'l Ass'n of Retired Fed. Employees v. Horner, 879 F.2d 873, 874 (D.C.Cir. 1989).* "In order for an agency to justify nondisclosure under Exemption 6, it must first establish that the requested information is in fact

19

properly classified as a 'personnel,' 'medical' or 'similar' file." *Stern v. SBA*, 516 F. Supp. 145, 148-49 (D.D.C. 1980).

FOIA Exemption 6 for personnel files, medical files and similar files "is designed 'to protect individuals from the *injury and embarrassment* that can result from the unnecessary disclosure of personal information.'" *Houser*, 486 F.Supp.3d at 140 (quoting *Department of State v Washington Post,* 456 U.S. 595, 599 (1982)) (emphasis added).

Here, Plaintiff requested records which show awards and commendations. Awards and commendations in service to the United States in time of need are not injurious or embarrassing.

The Supreme Court held, in *Dep't of State v. Wash. Post Co.*, that the citizenship information sought by a requester satisfies the "similar files" requirement of Exemption 6. 456 U.S. 595 (1982). Citizenship information is far more personal than a name, and can be used to discriminate against a person because of their country of origin. The Plaintiff here is not requesting citizenship information. The names of award recipients are not the same as citizenship information.

As Captain Lincoln D. Stroh, a distinguished Coast Guard officer and graduate of the Coast Guard Academy, stated "I was awarded a Coast Guard Achievement Medal for my actions as a staff Naval Architect, principally for my work on the Exxon Valdez disaster, in which I had to review, assess, and validate the stability of the vessel after two-thirds of the cargo tanks were ripped open when it grounded. The award was presented to me in front of my co-workers at the Marine Safety Center, numbering approximately 40 individuals." Stroh Decl. ¶ 7.

In Def.'s Mem., Defendant argues that the records provided by Defendant were "properly redacted under FOIA Exemption 6, as the records contained the personally identifiable

information of junior Coast Guard employees, disclosure of which 'would constitute a clearly unwarranted invasion of personal privacy.'" Def.'s' Mem. at 1.

Defendant further argues that "The redacted and withheld information . . . consists only of the names, ranks, rates, and personally identifying information of junior personnel that would constitute an unwarranted invasion of privacy if released." Def.'s Mem. at 2. Upon information and belief, Defendant did not release any reservist or auxillarist award records.

The Court in *Gordon v. FBI*, held that the names of agency employees were not personal information that met the Exemption 6 threshold. 388 F. Supp. 2d 1028, 1040-42 (N.D. Cal. 2005) (concluding that Exemption 6 does not apply to the names of agency's "lower-level" employees, and likewise opining that "[t]he [agency] still has not demonstrated that an employee's name alone makes a document a personnel, medical or 'similar file'"). 390 F. Supp. 2d 897, 902 (N.D. Cal. 2004).

In *Houser v. Church*, this Court held that the agency did not properly withhold from disclosure records, pursuant to FOIA Exemption 6 for personnel, medical, or other similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy, as the agency did not explain why the withheld information fell within the claimed exemption. *Houser*, 486 F.Supp.3d 117. For the case at bar, the agency did not adequately explain why the withheld information fell within the claimed exemption.

**B.  There is no privacy interest implicated in the disclosure of awards.**

Recipients of awards for commendable performance during the Deepwater Horizon Oil Spill response have no substantial privacy interest in these records.

"A substantial privacy interest is anything greater than a de minimis privacy interest." *Multi Ag*, 515 F.3d at 1229-30; s*ee, e.g., Barnard v. DHS*, 598 F. Supp. 2d 1, 11 (D.D.C. 2009);

*Schoenman v. FBI,* 576 F. Supp. 2d 3, 9 (D.D.C. 2008); *Unidad Latina En Accion v. DHS*, 253

F.R.D. 44, 48 (D. Conn. 2008); *Schoenman v. FBI*, 573 F. Supp. 2d 119, 148 (D.D.C. 2008);

*Schoenman v. FBI*, 575 F. Supp. 2d 136, 160 (D.D.C. 2008).

Under FOIA, "both the common law and the literal understanding of privacy" are

included in the definition of personal privacy. U.*S. Dep't of Justice v. Reporters Comm. for*

*Freedom of the Press*, 489 U.S. 749, 763 (1989).

Captain Stroh stated "Whether it is a formal award or whether it is an informal award, in

my experience, everyone – including me – in the Coast Guard recognizes that awards are

intended to be public and awards are never understood as private or somehow invading the

personal privacy of the Coast Guard member." Stroh Decl. ¶ 26.

"The balancing analysis for FOIA Exemption 6 requires that we . . . determine whether

disclosure of the files 'would compromise a substantial, as opposed to *de minimis*, privacy

interest,' because '[i]f no significant privacy interest is implicated . . . FOIA demands

disclosure.'" *Multi Ag Media LLC*, 515 F.3d at 1229 (quoting *Nat'l Ass'n of Retired Fed.*

*Employees*, 879 F.2d at 874).

The Court in *Multi Ag Media LLC v. USDA*, held that if the requested information falls

within Exemption 6, the next step in the analysis is to determine whether "disclosure would

constitute a clearly unwarranted invasion of personal privacy . . . [by] balanc[ing] the privacy

interest that would be compromised by disclosure against any public interest in the requested

information." 515 F.3d at 1228 (D.C. Cir. 2008). *See also Nat'l Archives & Records Admin.*, 541

U.S. at 172 ("The term 'unwarranted' requires us to balance the . . . privacy interest against the

public interest in disclosure."); *Wash. Post Co. v. HHS*, 690 F.2d 252, 261 (D.C. Cir. 1982)

("Finally, we balance the competing interests to determine whether the invasion of privacy is clearly unwarranted.").

The "clearly unwarranted" standard "creates a 'heavy burden'" for an agency invoking Exemption 6. *Morley v. CIA*, 508 F.3d 1108, 1127 (D.C. Cir. 2007) (quoting Wash. Post Co., 690 F.2d at 261). *See, e.g., Charles v. Office of the Armed Forces Medical Examiner*, 935 F.2d 86, 99 (concluding that Defendant had not met its heavy burden of showing more than a *de minimis* privacy interest in final battlefield autopsy reports).

Plaintiff is not requesting records that would constitute an unwarranted invasion of privacy. Plaintiff is requesting records of publicly acknowledged awards. *See FLRA v. U.S. Dep't of Commerce*, 962 F. 2d 1055, 1059-61 (D.C. Cir. 1992) (noting that performance awards "have traditionally been subject to disclosure"); *Core v. USPS*, 730 F.2d 946, 948 (4th Cir. 1984) (finding no substantial invasion of privacy in information identifying successful Federal job applicants).

Defendant erroneously relies on *Dep't of State v. Wash. Post Co.*, for its Exemption 6 analysis. 56 U.S. at 602 (1982). Defendant argues that "For FOIA Exemption 6 to apply, the information at issue must be maintained in a government file and 'appl[y] to a particular individual.'" Def.'s Mem. at 11. However, in *Dep't of State v. Wash. Post Co.*, the requester sought records indicating whether certain Iranian nationals held valid United States passports. 456 U.S. 595 (1982). Here, Plaintiff seeks records concerning awards often reported in publications, or given in public places or celebrated on social media, or all three.

Captain Stroh, offering his declaration for Plaintiff, has over 30 years of experience in the Coast Guard. He stated "During the Deepwater Horizon Oil Spill response, I was the Incident Commander for the Coast Guard from November 2010 to February 2011, as well as the Federal

On-Scene Coordinator (FOSC) from December 2010 to February 2011. As the Incident Commander and FOSC for the spill response, I was responsible for overseeing the government's response to the spill, including oversight of the responsible party's [BP] actions and working with all levels of government . . ." Stroh Decl. ¶ 3.

Captain Stroh, who has received two Masters of Science degrees, further stated that "My last personal award was presented to me at my end-of-tour and retirement ceremony in front of a large crowd of invitees in the conference room of a hotel. Friends, family, co-workers, peers, and Academy classmates were in attendance. Pictures were taken of the event, and a video was filmed." Stroh Decl. ¶ 8.

The Coast Guard itself even discloses all  kinds of awards to the public online. Captain Stroh attached Ex. 109 to his declaration showing the U.S. Coast Guard Sector New Orleans Facebook page posting the names, and ranks of formal and informal award recipients. Stroh Decl. ¶ 21. The post also contained pictures of the members in uniforms which portray their name, and rank.

The United States District Court for the District of Columbia has held that FOIA exemptions do not apply once the information is in the public domain. *Hall v. U.S. Dep't of Justice*, 552 F. Supp. 2d 23, 30-31 (D.D.C. 2008). The D.C. Circuit has held that under the public domain doctrine, information that would otherwise be subject to a valid FOIA exemption must be disclosed if that information is preserved in a permanent public record or is otherwise easily accessible by the public. S*ee Niagara Mohawk Power Corp. v. DOJ*, 169 F.3d 16, 19 (D.C. Cir.1999); *Davis v. DOJ*, 968 F.2d 1276, 1279 (D.C. Cir. 1992). *See also CNA Holdings, Inc. v. DOJ*, No. 07-2084, 2008 WL 2002050, at *6 (N.D. Tex. May 9, 2008) (finding court documents to be in the public domain due to defendant's failure to meet its "burden to show that

the documents that were clearly public and should be in the court's files, according to PACER and the common record retention practice of federal courts, are for some reason not actually still publicly available").

There is generally no substantial expectation of privacy regarding information that is particularly well known or is widely available within the public domain. *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1234 (10th Cir. 2007). An individual generally does not have substantial privacy interests with respect to information that he or she has made public themselves.

Captain Stroh stated "Many of these public ceremonies for Changes of Command or retirements were for enlisted members where ribbons and medals would be presented. As mentioned, the presentation of ribbons and medals at public ceremonies is agnostic to the rank of the member being recognized." Stroh Decl. ¶ 11.

Awards were often presented at "All Hands" meetings. Stroh Decl. ¶ 13. These kinds of "All Hands" meetings even occasionally occurred in a public parking lot in downtown New Orleans. *Id.*

Petty Officer Second Class Charles Grady, declarant for Plaintiff, asserted that he has "reviewed the requests that The Downs Law Group, PA made to the Coast Guard. I find it inconceivable that Coast Guard awards, which are made very publicly, would be regarded as private or an invasion of personal privacy of Coast Guard personnel. I feel it is obvious that the awards are public. There are official and unofficial Facebook pages that show awards given to Coast Guard personnel. Further, I receive the official Coast Guard Reserve Magazine, the *Reservist*, which lists the names, rates and ratings of hundreds of award recipients. The cover and a sample page from Issue 4 of 2021 is attached as Exhibit 106." Grady Decl. ¶¶ 7-8.

In addition to the physical receipt of the *Reservist*, Petty Officer Grady declared, "The *Reservist* magazine is also published online for the public to access. The public online version also contains a list of award recipient names, rates, and rankings of award recipients and a page from Issue 3 of 2010 is attached from the online website as Exhibit 107." *Id*. at 9.

Defendant concedes this point when it states that "disclosure under FOIA is tantamount to disclosure to the public at large." Def.'s Mem. at 12.

Petty Officer Grady was awarded the Coast Guard Achievement Medal. Grady Decl. ¶ 5. Officer Grady stated that, during the ceremony, "Present were approximately 20 Coast Guard enlisted and reservists and perhaps 15 or more government contractors and representatives from BP, [National Oceanic and Atmospheric Administration] NOAA, Department of the Interior and Louisiana Department of Wildlife." Grady Decl. ¶ 5.This demonstrates for the Court the public nature of these awards as members of the public were present during this ceremony.

The court in *Habeas Corpus Resource Ctr. v. DOJ*, ordered the release of email chains regarding the decision to hire a DOJ attorney, holding that "[p]laintiff's interest - and the public's interest - in determining whether [attorney's] hiring was improper is sufficient to outweigh any minimal privacy interest [the attorney] may have in keeping these opinions from the public." No. 08-2649, 2008 WL 5000224, at *4 (N.D. Cal. Nov. 21, 2008). *See also Cowdery, Ecker & Murphy, LLC v. Dep't of Interior*, 511 F. Supp. 2d 215, 219 (D. Conn. 2007) ("Because exemption 6 seeks to protect government employees from unwarranted invasions of privacy, it makes sense that FOIA should protect an employee's personal information, but not information related to job function."). The records sought in this case describe, among other things, job function.

In *Bigwood v. USAID*, this Court ruled that Defendant had presented declarations which sufficiently detail the potential harm to the employees if the identities of the grantee organizations at issue in the case were released. 484 F. Supp. 2d 68, 77 (D.D.C. 2007).

Here, Defendant's declarant states, in a conclusory manner, only that "Coast Guard personnel and their family members are vulnerable to harassment or violence from individuals who maliciously acquire and disseminate this type of information. Coast Guard personnel therefore have a substantial interest in having their personally identifying information- including their names, rate and rank, duty address, and titles– protected and withheld from public release. The Deepwater Horizon incident and response are well-known and highly publicized events; therefore, these individuals are at heightened risk of unwanted contact." Judge Decl., ¶ 37. *Cf. Long v. OPM*, No. 05-1522, 2007 WL 2903924, at *15 (N.D.N.Y. Sept. 30, 2007) ("[W]hether the disclosure of names of government employees threatens a significant privacy interest depends on the consequences likely to ensue from disclosure").

Here, Plaintiff is asking for name and award, not rate, rank, address, email, phone, date of birth, employee identification number, nor is Plaintiff asking for any additional personal information beyond the award and name. The requested records are of such a nature that no expectation of privacy exists. *See, e.g., People for the Am. Way v. National Park Serv.*, 503 F. Supp. 2d 284, 306 (D.D.C. 2007) (Disclosing the mere identity of individuals who voluntarily submitted comments did not raise the kind of privacy concerns protected by Exemption 6).

Further, the U.S. Office of Personnel Management (OPM), which describes itself on its website as the "personnel policy manager for the Federal Government," specifies that certain information contained in Federal employee personnel files is generally available to the public. OPM Regulation, 5 C.F.R. § 293.311 (2018). OPM states at 5 C.F.R. § 293.311 (a):

a) The following information from both the OPF and employee performance file system records, their automated equivalent records, and from other personnel record files that constitute an agency record within the meaning of the FOIA and which are under the control of the Office, about most present and former Federal employees, is available to the public:

> (1) Name;
>
> (2) Present and past position titles and occupational series;
>
> (3) Present and past grades;
>
> (4) Present and past annual salary rates (including performance awards or bonuses, incentive awards, merit pay amount, Meritorious or Distinguished Executive Ranks, and allowances and differentials);
>
> (5) Present and past duty stations (includes room numbers, shop designations, or other identifying information regarding buildings or places of employment); and
>
> (6) Position descriptions, identification of job elements, and those performance standards (but not actual performance appraisals) that the release of which would not interfere with law enforcement programs or severely inhibit agency effectiveness. Performance elements and standards (or work expectations) may be withheld when they are so interwined with performance appraisals that their disclosure would reveal an individual's performance appraisal.

"Notably, in a rider to the Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999, Pub. L. No. 105-277, 112 Stat. 2681 (Oct. 21, 1998), Congress directed the Office of Management and Budget to amend OMB Circular A–110, *Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards*, to mandate that 'Federal awarding agencies . . . ensure that all data produced under an award will be made available to the public through the procedures established under' FOIA. Pub. L. No. 105-277, 112 Stat. at 2681-495" Congressional Research Service 4.

Other agencies with sensitive missions follow this guidance. The Department of Defense states that without authorization from the service member or next of kin, it will still disclose information including but not limited to "[n]ame, photograph, and service number[; d]ates and branch of service[; a]ssignments and geographic locations[; and m]ilitary education level, awards

and decorations." https://www.militaryonesource.mil/financial-legal/legal/other-legal-issues/service-member-privacy-versus-public-access-to-information/. The Department of Defense therefore makes clear that the information sought from the Coast Guard would be disclosed in any other branch of the military.

Defendant relies on *Waterman v. IRS*, arguing that Federal employees involved in law enforcement, military personnel, and employees in sensitive occupations have substantial privacy interests in their personally identifying information. 288 F. Supp. 3d 206, 211 (D.D.C. 2018); Def.'s Mem. at 12. In *Waterman* however, the information withheld by the agency was the phone numbers *and* email addresses of certain IRS employees. 288 F. Supp. 3d 206 (D.D.C. 2018). Here, Plaintiff did not request any contact information. The Court in *Waterman*, held that withholding employees' contact information properly balanced the employees' privacy interests against the minimal public need for disclosure. *Waterman v. IRS,* 288 F. Supp. 3d 206 (D.D.C. 2018).

The *Waterman* Court went on to hold that the "contact information for individual employees sheds little 'light on an agency's performance of its statutory duties . . .  yet exposes individual employees to threatening or harassing contacts from the public.'" *Waterman,* 288 F. Supp. 3d at 212 (quoting *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989). Here, Plaintiff did not request any contact information. Plaintiff argues that award recipient names are not a substantial privacy interest, and that member names, who were forced to work with oil and chemicals, exposure to which can cause lethal brain cancer, sheds tremendous light on the Coast Guard's performance of its statutory duties which include protecting the safety of Coast Guard members.

Declarant, John Campo, stated "I retained the Downs Law Group because they represent hundreds of survivors who have brought suits against BP related to the Deepwater Horizon Oil Spill (DHOS), including numerous Coast Guard members who have developed various health conditions after the work during the DHOS." Campo Decl. ¶ 9. Mr. Campo further stated

> Six years after the DHOS, on January 12, 2017, my son collapsed from an unexpected seizure while undergoing Coast Guard Reserve training. [Exhibit 110]. After being taken to the hospital for his seizure, the doctors took a CT scan and discovered a tumor. Ultimately, my son was diagnosed with brain cancer. Over a year and a half after this seizure, on October 9, 2018, my son died at the young age of 32. *Id.* I believe my son – an otherwise completely healthy individual– developed brain cancer from his exposure to oil and other toxic chemicals during his service in the DHOS.

*Id.* ¶¶ 6-8.

Specifically, the *Waterman* Court ruled that the IRS's redaction of *contact information* was proper under Exemption 6. *Waterman,* 288 F. Supp. 3d 206, 212. The *Waterman* Court cites, as examples, *Judicial Watch, Inc. v. Food Drug Admin.*, 449 F.3d 141, 153 (D.C. Cir. 2006) (names *and* addresses) and C*leveland v. US Dep't of State*, 128 F. Supp. 3d 284, 300 (2015) (mobile phone number). Plaintiff is not seeking any *contact information* in its two requests.

Even the Coast Guard's own *Military Medals and Awards Manual* undermines Defendant's argument that these awards are meant to be private. Before a Coast Guard award may be presented, a recommendation for the award must be made. These recommendations must contain a citation which explains the reason for giving the award. The *Military Medals and Awards Manual* goes on to state that the citation "is laudatory and formalized; [] should highlight the primary action(s) for which the award is proposed; . . . should be concise, forward, and *easy to read aloud*; and it should be *adaptable to publication by the media*." *Commandant Instruction M1650.25E*, 15 August 2016 at 1-10. This regulation makes clear that these awards are considered public not only by Coast Guard members, but by Coast Guard regulation.

Captain Stroh stated,"Throughout my Coast Guard career, I participated in and/or witnessed hundreds of medals, ribbons, and informal awards being presented to service members at promotion and advancement ceremonies, retirement ceremonies, end-of-tour luncheons, 'All Hands' gatherings, Changes of Command, and other gatherings where a service member is publicly recognized." Stroh Decl. ¶ 9.

### C. Coast Guard member lives can still be saved by the disclosure of these records. There is a substantial public interest in protecting their lives.

"The records sought here can be used to protect those members who are still alive, and to answer questions for parents like myself." Campo Decl. ¶ 11.

"'Only where a privacy interest is implicated does the public interest for which the information will serve become relevant and require a balancing of the competing interests'" *Associated Press v. DOD*, 554 F.3d 274, 291 (2d Cir. 2009) (quoting *FLRA v. VA* 958 F.2d at 509 (2d Cir. 1992)). "Where [] privacy concerns . . . are present, the exemption requires the person requesting the information to establish a sufficient reason for the disclosure." *NARA v. Favish*, 541 U.S. 157, 172 (2004). Member lives can be saved, diseases detected sooner, and families of the deceased comforted by the disclosure of the records requested by Plaintiff.

Requested records will shed light on the operations of the Coast Guard as the names will show who the Coast Guard was willing to put at risk. *See Wash. Post Co.*, 690 F.2d at 258-65 (holding personal financial information required for appointment as HHS scientific consultant not exempt when balanced against need for oversight of awarding of government grants).

Defendant admits that the "[t]hese award tracking spreadsheets capture the names of virtually all personnel who served in the response in 2010, as the Special Operations Service Ribbon was awarded to all personnel who served in the response for 21 days or more." Def.'s Mem. at 11. The names of the Coast Guard members who received awards for their service are

critical as those members need to be aware of the possible lethal consequences of their service. *See Morley*, 508 F.3d at 1127 ("'Exemption 6's requirement that disclosure be clearly unwarranted instructs us to tilt the balance (of disclosure interests against privacy interests) in favor of disclosure.'" (quoting *Wash. Post Co.*, 690 F.2d at 261).

Captain Stroh stated that "Citations would be read publicly for both the formal and informal awards before pictures were taken of the award presentations." Stroh Decl. ¶ 10. Defendant provided no informal awards despite records of those kinds of awards existing. Ex. 109.

Declarant for Plaintiff, Mr. John Campo, submitted his declaration and informed the Court that his son, Petty Officer First Class Andrew Campo, was among the Coast Guard members who died as a result of exposure to the oil and disbursements which he worked with during the response to the BP Deepwater Horizon Oil Spill. *See* Campo Decl.

Mr. Campo goes on to lament "I believe my son—an otherwise completely healthy individual—developed brain cancer due to his exposure to oil and other toxic chemicals during his service in the BP Deepwater Horizon Oil Spill." Campo Decl ¶ 8.

Defendant relies on *Ecological Rights Found. v. U.S. Envtl. Protec. Agency*, which stated "an agency need not establish much more than the fact of disclosure to establish foreseeable harm." 541 F. Supp. 3d 34, 65 (D.D.C. 2021); Def.'s Mem. at 13. The FOIA Exemption invoked by the Defendant in *Ecological Rights Found. v. U.S. Envtl. Protec. Agency*, was Exemption 7(C), not Exemption 6, as the Defendant has invoked here. 541 F. Supp. 3d 34 (D.D.C. 2021).

The full sentence from this Court's opinion, which was omitted by Defendant in its Memorandum, is "Thus, *when invoking Exemption 7(C)*, an agency need not establish much more than the fact of disclosure to establish foreseeable harm." *Ecological Rights Found.*, 541 F.

32

Supp. 3d at 65 (emphasis added). *See e.g. Allen*, 636 F. 2d 1287, n.70 ("Plaintiff charges the CIA with bad faith in not informing the trial court that a certain regulation pertaining to classification under Executive Order 12065 had been amended. . . . We do not address the issue of bad faith, however, inasmuch as the other considerations by themselves demonstrate that *in camera* inspection is plainly necessary").

The Supreme Court in *Nat'l Archives & Recs. Admin. v. Favish*, teaches us the difference between Exemption 6 and Exemption 7(C). *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157 (2004). The Supreme Court held that the 7(C) "provision is in marked contrast to the language in Exemption 6, pertaining to 'personnel and medical files,' where withholding is required only if disclosure 'would constitute a clearly unwarranted invasion of personal privacy.'" *Id.* at 165. "The adverb 'clearly,' found in Exemption 6, is not used in Exemption 7(C)." *Id*. at 166.

The Supreme Court further stated that "whereas Exemption 6 refers to disclosures that 'would constitute' an invasion of privacy, Exemption 7(C) encompasses any disclosure that 'could reasonably be expected to constitute' such an invasion." *DOJ v. Reporters Comm. for Free Press*, 489 U.S. 749, 756 (1989). "Exemption 7(C)'s comparative breadth is no mere accident in drafting. We know Congress gave special consideration to the language in Exemption 7(C) because it was the result of specific amendments to an existing statute." *Favish*, 541 U.S. at 166.

Mr. Campo, through grief, further stated "My son was honored for his service during the DHOS and for his service to this country. Neither I, my wife, nor my son, ever had any interest in keeping this honor private. My son's letter of commendation for his service during the DHOS is something I take great pride in. My son, Petty Officer First Class Campo, is a hero to this

33

country for his bravery during the DHOS cleanup. He and the other Coast Guard members represent the best this nation has to offer. I expect numerous other Coast Guard members have developed, or will develop, serious health conditions due to their exposure to oil and toxic chemicals during the DHOS, just as my son did. The records sought here can be used to protect those members who are still alive, and to answer questions for other parents like myself." Campo Decl. ¶¶ 10-11.

## VI. CONCLUSION

Coast Guard member lives can still be saved, and catastrophic injury avoided or mitigated, by the disclosure of these records, which were intended to be public.

There is a substantial public interest in protecting member lives. These types of awards were presented in public ceremonies, are routinely disclosed by Defendant online and in print, and are believed by recipients to be public. Defendant failed to provide Plaintiff with the records requested, despite ample opportunity and a statutory requirement to do so.

Plaintiff never narrowed its requests. In fact, Plaintiff explicitly refused to narrow its first request. Plaintiff was never asked to narrow its second request. Years into this process, when Defendant requested another narrowing of the first request, Plaintiff refused, and clarified the purpose for which the request was made in an attempt to overcome the government's concern about unwarranted invasions of personal privacy. Instead, Defendant, in bad faith, misrepresented Plaintiff's clarification as a narrowing in an attempt to ease its burden of releasing responsive records.

A record listing award recipients from the Deepwater Horizon Oil Spill response is neither a medical file, personnel file, or other similar file. Defendant released 1,180 pages of substantially redacted records. This Court should immediately order the Defendant to unredact

those records as Defendant illegally invoked Exemption 6 to justify its redaction. There is no substantial privacy interest implicated in disclosing recipients of publicly bestowed awards. However, a substantial public interest exists in knowing the award recipients.

Defendant halted its search for responsive records following its misrepresentation of Plaintiff's clarification. In doing so, Defendant failed to search additional places, such as emails, where unofficial awards may be present, including Sailor-of-the-Quarter awards and command coin awards.

**THEREFORE**, this Court should grant summary judgment in favor of Plaintiff because Defendant failed to conduct a proper search and improperly withheld records.

Dated:  This 27th day of June, 2022.

Respectfully Submitted,

/s/ C. Peter Sorenson
C. Peter Sorenson, DC Bar #438089
Sorenson Law Office
PO Box 10836
Eugene, OR 97440
(541) 606-9173
peter@sorensonfoialaw.com

*Attorney for Plaintiff*