**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                              )
DOWNS LAW GROUP, P.A.,                        )
                                              )
                Plaintiff,                    )
                                              )
        v.                                    )        Civil Action No. 21-2407 (RBW)
                                              )
UNITED STATES COAST GUARD,                    )
                                              )
                Defendant.                    )
_____)

**<u>MEMORANDUM OPINION</u>**

The plaintiff, Downs Law Group, P.A., brings this civil action against the defendant, the

United States Coast Guard, pursuant to the Freedom of Information Act (the "FOIA"), 5 U.S.C.

§ 552.  <u>See</u> Complaint ("Compl.") ¶¶ 32–45, ECF No. 1.  Currently pending before the Court are

(1) the Defendant's Motion for Summary Judgment ("Def.'s Mot." or the "defendant's motion"),

ECF No. 12, and (2) the Plaintiff's Cross-Motion for Summary Judgment ("Pl.'s Mot." or the

"plaintiff's motion"), ECF No. 14.  Upon careful consideration of the parties' submissions,[1] the

Court concludes for the following reasons that it must deny without prejudice both the

defendant's motion and the plaintiff's motion.

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Defendant's Statement of Material Facts as to Which There is No Genuine Dispute ("Def.'s Facts"), ECF No. 12; (2) the Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment ("Def.'s Mem."), ECF No. 12; (3) the Declaration of Brian Judge ("Judge Decl."), ECF No. 12-1; (4) the Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n"), ECF No. 13; (5) the Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion for Summary Judgment ("Pl.'s Mem."), ECF No. 14-1; (6) the Plaintiff's Response to Defendant's Statement of Material Facts as to Which There is No Genuine Dispute and Plaintiff's Statement of Material Facts Not in Genuine Dispute ("Pl.'s Facts"), ECF No. 14-2; (7) the Defendant's Reply in Support of Defendant's Motion for Summary Judgment and Opposition to Plaintif[f]'s Cross-Motion for Summary Judgment ("Def.'s Opp'n"), ECF No. 15; and (8) the Plaintiff's Reply to Defendant's Opposition to Plaintiff's Cross-Motion for Summary Judgment ("Pl.'s Reply"), ECF No. 18.

# I.     BACKGROUND

**A.     Factual Background**

The plaintiff submitted two FOIA requests to the defendant requesting records related to the "[m]embers of the Coast Guard [who] responded to the[,]" Pl.'s Facts ¶ 32, "April 20, 2010[] [ ] British Petroleum (['']BP['']) Deepwater Horizon" oil spill, id. ¶ 31.  See Def.'s Facts ¶ 1.  On June 14, 2020, the plaintiff submitted its first FOIA request, primarily seeking "'all records in possession or control of the Coast Guard which show[] approval of, commendation for, medals for, approbation for, or letters of commendation for['] active duty and auxiliarist Coast Guard personnel during the BP Deepwater Horizon Oil Spill."  Pl.'s Facts ¶ 39 (quoting Declaration of Craig Thomas Downs ("Downs Decl.") ¶ 9, ECF No. 14-3); see Def.'s Facts ¶ 1.  The plaintiff then submitted its second FOIA request on August 6, 2020, seeking the same records as its first request, with the addition of the information pertaining to reservists.  See Pl.'s Facts ¶ 41.  Specifically, in both requests, the plaintiff sought records "created or received in 2010[,]" comprised of:

    a.  All records which show approval of, commendation for, medals for, and letters of commendation for all Coast Guard personnel for service during the cleanup of the BP Deepwater Horizon Oil Spill;

    b.  All records which release news of commendations of Coast Guard personnel for service during the cleanup;

    c.  All records bringing the public's attention to the service of Coast Guard personnel during the cleanup;

    d.  All records issued to Coast Guard personnel during the cleanup;

    e.  All records that depict the names of Coast Guardsmen who served on the water during the cleanup;

    f.  All records that would lead to the public's understanding of the names and numbers of Coast Guard personnel who served during the cleanup;

 g. All records that show the work of Coast Guard personnel during the cleanup; and

 h. All records sent by the Coast Guard to Congress describing commendable actions by Coast Guard personnel during the clean-up.

Def.'s Facts ¶ 1; see Pl.'s Facts ¶ 1.  The plaintiff's first request "only covered active duty and auxiliary personnel, but [the plaintiff's second] request also covered reservists[.]"  Pl.'s Facts ¶ 41.

 After receiving the plaintiff's requests, the defendant's "Office of Privacy Management assigned [the p]laintiff's first FOIA request the tracking number 2020-CGFO-01820 and assigned [the p]laintiff's second FOIA request the tracking number 2020-CGFO-02512."  Def.'s Facts ¶ 10; see Pl.'s Facts ¶ 10.  In response to the plaintiff's requests, the defendant searched for responsive records, see Def.'s Facts ¶ 7; Pl.'s Facts ¶ 7, and "located [and released the following] three Deepwater Horizon awards tracking sheets[,]" Def.'s Facts ¶ 4:

 a. "Deepwater Horizon Master SOS Roster," a spreadsheet containing the master list of Coast Guard personnel who received the Special Operations Service Ribbon ("SOS"), which was authorized for service in support of the Deepwater Horizon response for 21 days or more;

 b. "LANT Area DWH D8 Awards Team Tracking Spreadsheet," containing the District Eight Awards Team's tracking spreadsheet for various levels of awards related to Coast Guard personnel's service in support of the Deepwater Horizon response; and

 c. "CG DWH SOS Award Recipient List 27OCT11," containing a list of Coast Guard SOS recipients for service in support of the Deepwater Horizon response[,]

id.; see Pl.'s Facts ¶ 4.  In addition to these three awards-tracking sheets, the defendant also released:

 a. Ten Coast Guard Compass blog posts containing information about the Coast Guard's response to Deepwater Horizon;

    b.  ALCOAST 515/10, a service-wide message providing award guidance for the Deepwater Horizon oil spill response;

    c.  "On Scene Coordinator Report Deepwater Horizon Oil Spill," the On-Scene Coordinator Report documenting the response to the oil spill; and

    d.  A Defense Visual Information Service search link to a pre-set search with specific parameters that include all images accessioned by Coast Guard units during 2010 that mention Deepwater Horizon.

Def.'s Facts ¶ 25; Pl.'s Facts ¶ 25.  Regarding all of the records it released, the defendant redacted "the names and other personally identifying information of junior Coast Guard personnel, O5/GS-15 and below, . . . under FOIA exemption 6[,]" Def.'s Facts ¶¶ 6, 26; see Pl.'s Facts ¶¶ 6, 26, asserting that "releasing this information would be a clearly unwarranted invasion of personal privacy[,]" Def.'s Facts ¶ 6; see id. ¶ 26.

## B.    Procedural Background

On September 13, 2021, the plaintiff filed its Complaint in this case.  See Compl. at 1. On January 13, 2022, the parties filed a joint status report stating that "[the d]efendant ha[d] concluded its processing of [the p]laintiff's . . . []FOIA[] request[s,]" Joint Status Report (Jan. 13, 2022) ¶ 1, ECF No. 9, and proposing a summary judgment briefing schedule, see id. ¶ 3.  On May 24, 2022, the defendant filed its motion for summary judgment.  See Def.'s Mot. at 1.  The plaintiff then filed its cross-motion for summary judgment and opposition to the defendant's motion for summary judgment on June 27, 2022.  See Pl.'s Mot. at 1; Pl.'s Opp'n at 1.  The defendant filed its opposition to the plaintiff's cross-motion and reply in support of its motion on July 25, 2022, see Def.'s Opp'n at 1,[2] and the plaintiff filed its reply in support of its cross-motion on August 23, 2022, see Pl.'s Reply at 1.

---

[2] The defendant also submitted a supplemental unsworn declaration from Brian Judge along with its combined opposition and reply.  See Declaration of Brian Judge ("2d Judge Decl.") at 1, ECF No. 15-1.  "Local Civil Rule 5.1(f) and 28 U.S.C. § 1746 set out the admissibility requirements for an unsworn declaration[ and b]oth are clear

(continued . . .)

## II.     STANDARD OF REVIEW

The Court must grant a motion for summary judgment "if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a).  When ruling on a motion for summary judgment, the Court must

view the evidence in the light most favorable to the non-moving party.  See Holcomb v. Powell,

433 F.3d 889, 895 (D.C. Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133,

150 (2000)).  The Court must therefore draw "all justifiable inferences" in the non-moving

party's favor and accept the non-moving party's evidence as true.  Anderson v. Liberty Lobby,

477 U.S. 242, 255 (1986).  The non-moving party, however, cannot rely on "mere allegations or

denials," Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting Anderson, 477 U.S. at

248), but must instead present specific facts "such that a reasonable [factfinder] could return a

verdict for the non[-]moving party," Grosdidier v. Broad. Bd. of Governors, Chairman, 709 F.3d

19, 23 (D.C. Cir. 2013) (quoting Anderson, 477 U.S. at 248).  Thus, "[c]onclusory allegations

unsupported by factual data will not create a triable issue of fact."  Pub. Citizen Health Rsch.

Grp. v. Food & Drug Admin., 185 F.3d 898, 908 (D.C. Cir. 1999) (Garland, J., concurring)

(alteration in original) (quoting Exxon Corp. v. Fed. Trade Comm'n, 663 F.2d 120, 127 (D.C.

Cir. 1980)).  If the Court concludes that "the non[-]moving party has failed to make a sufficient

showing on an essential element of [its] case with respect to which [it] has the burden of

proof[,]" then the moving party is entitled to summary judgment.  Celotex Corp. v. Catrett, 477

U.S. 317, 323 (1986).  Thus, when "ruling on cross-motions for summary judgment, the [C]ourt

---

(. . . continued)

that the Court may rely on unsworn declarations . . . only where the declarant signs the declaration under penalty of
perjury." Yanofsky v. U.S. Dep't of Commerce, No. 19-cv-2290 (FYP), 2022 WL 2980344, at *3 (D.D.C. Mar. 31,
2022); see LCvR 5.1(f); 28 U.S.C. § 1746.  Here, the defendant's supplemental declaration is unsigned, see
generally 2d Judge Decl., and "[a]s a result, . . . may not be relied upon by this Court in deciding the parties' cross
motions for summary judgment[,]" Yanofsky, 2022 WL 2980344, at *3.  Therefore, in rendering its decision
regarding the pending motions in this case, the Court has not considered the defendant's supplemental declaration.

shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed." Shays v. Fed. Electoral Comm'n, 424 F. Supp. 2d 100, 109 (D.D.C. 2006).

"FOIA cases typically are resolved on a motion for summary judgment." Ortiz v. U.S. Dep't of Just., 67 F. Supp. 3d 109, 116 (D.D.C. 2014); see also Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). The "FOIA requires federal agencies to disclose, upon request, broad classes of agency records unless the records are covered by the statute's exemptions." Students Against Genocide v. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001); see also Wash. Post Co. v. U.S. Dep't of Just., 863 F.2d 96, 101 (D.C. Cir. 1988) ("[The] FOIA is to be interpreted with a presumption favoring disclosure and exemptions are to be construed narrowly."). In a FOIA action, the agency has "th[e] burden of demonstrating that the withheld documents are exempt from disclosure[,]" Boyd v. U.S. Dep't of Just., 475 F.3d 381, 385 (D.C. Cir. 2007), and this burden "cannot be met by mere conclusory statements[,]" Wash. Post Co., 863 F.2d at 101. "The agency may meet this burden by filing affidavits describing the material withheld and the manner in which it falls within the exemption claimed[,]" King v. U.S. Dep't of Just., 830 F.2d 210, 217 (D.C. Cir. 1987), and by "show[ing] how release of the particular material would have the adverse consequence that the [FOIA] seeks to guard against[,]" Wash. Post Co., 863 F.2d at 101.

Courts will grant summary judgment to the agency in a FOIA case only if the agency can prove "that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." Friends of Blackwater v. U.S. Dep't of Interior, 391 F. Supp. 2d 115, 119 (D.D.C. 2005) (quoting Greenberg v. U.S. Dep't of Treasury, 10 F. Supp. 2d 3, 11 (D.D.C. 1998)). Thus,

in a lawsuit brought to compel the production of documents under the FOIA, "an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly[, or partially,] exempt from [disclosure].'" Students Against Genocide, 257 F.3d at 833 (first alteration in original) (quoting Goland v. Cent. Intel. Agency, 607 F.2d 339, 352 (D.C. Cir. 1978)).  Even when the requester files a motion for summary judgment, the government "'ultimately [has] the onus of proving that the [documents] are exempt from disclosure.'" Pub. Citizen Health Rsch. Grp., 185 F.3d at 904 (alterations in original) (quoting Nat'l Ass'n of Gov't Emps. v. Campbell, 593 F.2d 1023, 1027 (D.C. Cir. 1978)).  However, "[t]he burden upon the requester is merely 'to establish the absence of material factual issues before a summary disposition of the case could permissibly occur.'" Id. at 904–05.

## III.    ANALYSIS

The defendant argues that it is entitled to summary judgment because (1) "[its] search was reasonably calculated to return responsive records" and was therefore "adequate[,]" and (2) "all responsive records were released to [the p]laintiff and properly redacted under FOIA Exemption 6[.]"  Def.'s Mem. at 1.  In response to the defendant's arguments and in support of its cross-motion for summary judgment, the plaintiff argues that the defendant (1) "failed to conduct an adequate search[,]" and (2) "improperly withheld records" pursuant to Exemption 6. Pl.'s Mem. at 7.  The Court will first address the adequacy of the defendant's search, before determining whether the defendant properly withheld records under Exemption 6, and then concluding with a segregability analysis.

A.      **The Adequacy of the Defendant's Search**

The plaintiff argues that the defendant failed to perform an adequate search for the

records requested because (1) "[the d]efendant misrepresented a clarification [as to the plaintiff's

first request] as a narrowing" of the scope of its request and therefore improperly completed its

search for records based on this "narrowed" construction of the plaintiff's requests, and (2) "the

[d]efendant's description of the search was seriously lacking." Id. at 17.  In response, the

defendant argues that (1) it "reasonably interpreted [a] conversation with [the p]laintiff . . . to be

a narrowing of [its] request[s,]" Def.'s Opp'n at 15, and thus "[the d]efendant's search was

adequate in light of [this] modification[,]" id. at 13, and (2) "[the d]efendant adequately

described the search terms and methods used in conduct[ing its] search[,]" id. at 15.

"An agency fulfills its obligations under [the] FOIA if it can demonstrate beyond material

doubt that its search was reasonably calculated to uncover all relevant documents."

Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (internal quotation

marks omitted).  "[C]ourt[s] appl[y] a reasonableness test to determine the adequacy of a search

methodology, consistent with congressional intent tilting the scale in favor of disclosure[.]"

Morley v. Cent. Intel. Agency, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (internal quotation marks

and citations omitted).  "This 'reasonableness' inquiry is necessarily 'dependent upon the

circumstances of the case.'"  Swick v. U.S. Dep't of the Army, 471 F. Supp. 3d 246, 251

(D.D.C. 2020) (quoting Davis v. Dep't of Just., 460 F.3d 92, 103 (D.C. Cir. 2006)).  "The

question is not 'whether there might exist any other documents possibly responsive to the

request, but rather whether the search for those documents was adequate.'"  Steinberg v. Dep't of

Just., 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting Weisberg v. Dep't of Just.,

745 F.2d 1476, 1485 (D.C. Cir. 1984)) (emphasis in original).  "The agency must show that it

made a good faith effort to conduct a search for the requested records, using methods which can

be reasonably expected to produce the information requested." Valencia-Lucena, 180 F.3d

at 326 (internal quotation marks and alterations omitted).  "The agency cannot limit its search to

only one or more places if there are additional sources that are likely to turn up the information

requested." Id. (internal quotation marks omitted).

> In a suit seeking agency documents . . . at the summary judgment stage, where the
> agency has the burden to show that it acted in accordance with the statute, the
> court may rely on a reasonably detailed affidavit, setting forth the search terms
> and the type of search performed, and averring that all files likely to contain
> responsive materials (if such records exist) were searched.

Chambers v. U.S. Dep't of Interior, 568 F.3d 998, 1003 (D.C. Cir. 2009) (internal quotation

marks and alterations omitted).

### 1.  Whether the Plaintiff Narrowed Its Requests

The parties dispute whether the plaintiff narrowed its requests for responsive documents.

See Def.'s Facts ¶ 2; Pl.'s Facts ¶ 2.  The defendant contends that "[the p]laintiff communicated

to [the d]efendant, verbally and in writing, that they 'were simply looking for the names of the

Coast Guard members that participated in the 2010 Deepwater Horizon BP oil spill clean-up

operations[,]'" Def.'s Opp'n at 13 (quoting Judge Decl., Exhibit ("Ex.") A (Email from Craig

Downs to Anne Harper and Callie Deweese (Oct. 27, 2021) ("Oct. 27, 2021 Email")) at 3, ECF

No. 12-1), and that in response to what the defendant construed as a narrowing of the plaintiff's

requests, "[the d]efendant ceased searching for records other than those that contained lists of the

names of the Coast Guard members that participated in the 2010 Deepwater Horizon BP oil spill

clean-up operations[,]" id. at 15.  However, the plaintiff contends that the defendant

misconstrued this communication as a narrowing of the plaintiff's requests, stating that this

communication merely "clarif[ied] the purpose of the request[,]" Pl.'s Mem. at 12 (quoting

Downs Decl. ¶ 15), and moreover, that because this "clarification email . . . only pertained to the

[plaintiff's] first request," id. at 12–13, and "the records sought by the second request encompass all those sought by the first request, the alleged 'narrowing' of the first request is irrelevant[,]" id. at 13–14.

"In resolving this dispute, it is the Court's duty to review the record de novo, including the scope of the FOIA request." Dillon v. U.S. Dep't of Just., 444 F. Supp. 3d 67, 84 (D.D.C. 2020). Regarding the scope of a FOIA request, "[t]he linchpin inquiry is whether the agency is able to determine precisely what records are being requested." Yeager v. Drug Enf't Admin., 678 F.2d 315, 326 (D.C. Cir. 1982) (internal quotation marks omitted). And, although "a FOIA requester has an obligation to 'reasonably describe[]' the records [it] seeks[,]" Wallick v. Agricultural Mktg. Serv., 281 F. Supp. 3d 56, 67 (D.D.C. 2017) (quoting 5 U.S.C. § 552(a)(3)) (first alteration in original), "an agency analyzing [its] request 'also has a duty to construe [the] FOIA request liberally[,]'" id. (quoting Nation Mag. v. U.S. Customs Serv., 71 F.3d 885, 890 (D.C. Cir. 1995)) (second alteration in original). Furthermore, the question of whether the plaintiff narrowed its requests in this case is crucial because "when a plaintiff narrows [its] FOIA request[,] . . . it supersedes any broader request set forth in the plaintiff's complaint[,]" Am. Ctr. for L. & Just. v. U.S. Dep't of Just., 325 F. Supp. 3d 162, 168 (D.D.C. 2018), and a plaintiff "cannot, having limited the scope of [a] search, turn around and say that th[e] limited search is inadequate in its scope[,]" Dillon, 444 F. Supp. 3d at 87.

Here, the Court concludes, based upon a reasonable construal of the plaintiff's October 27, 2021 email, that the plaintiff did not narrow its first FOIA request. The defendant contends that after the plaintiff's initial refusal to modify the scope of its request in July 2020, "FOIA officers . . . assigned to process [the p]laintiff's first request communicated with [the p]laintiff on October 26, 2021[,] concerning [ ] what records were being sought" and "[i]n this conversation,

[the p]laintiff verbally modified the request."  Def.'s Opp'n at 14.  The defendant further states

that, "[f]ollowing that conversation, [the p]laintiff sent the FOIA Officers an e-mail confirming"

the modification.  Id.  In this email, the plaintiff states:

> Ms. Deweese and L[ieutenant] Harper,
>
> It was a pleasure speaking with you all yesterday.
>
> We were able to clarify that we were simply looking for the names of Coast
> Guard members that participated in the 2010 Deepwater Horizon BP Oil Spill
> clean-up operations.
>
> You all were concerned you might be pulled off the project because a lawsuit had
> been filed after [two] years of numerous requests by our law firm, however we are
> hopeful you can take this project up and locate these records as you seemed very
> familiar with the situation and provide it to us eliminating the need to continue to
> sue the Coast Guard and fulfill our lawful request.
>
> Please let us know where you are in all of this so that we may be able to eliminate
> the need for further litigation.
>
> If you have further comments or ways you may have thought of to help fulfill our
> simple request please advise us at you earliest convenience.
>
> Thanks again.
>
> Regards,
>
> Craig

Judge Decl., Ex. A (Oct. 27, 2021 Email) at 3.

The Court cannot conclude based upon the text of this email alone that the plaintiff

"formally narrowed [its] request[,]" Dillon, 444 F. Supp. 3d at 83, such that the defendant would

reasonably interpret this statement to supersede the plaintiff's original requests.  Construing the

plaintiff's request liberally—as the defendant was required to do, see Nation Mag., 71 F.3d at

890—this email appears to represent a clarification regarding the plaintiff's original request,

especially in light of the parties' apparently ongoing discussions regarding the defendant's

assertion of Exemption 6 as to the disclosure of various forms of personal identification, see, e.g., Downs Decl., Ex. 103 (Email from Peter Sorenson to Amanda Ackerson (Aug. 3, 2020) ("Aug. 3, 2020 Email")) at 1, ECF No. 14-3 (declining to narrow the plaintiff's first request and stating in response to the defendant's assertion of Exemption 6 that the plaintiff is "not seeking [ ] telephone numbers, email addresses, mailing addresses, social security numbers, [or] Coast Guard identification numbers, but [is] seeking records containing the names of Coast Guardsmen – active, reserve on active status and [a]uxiliary – who were given awards, citations, honors, commendations, medals, etc." (emphasis added)).

Moreover, the Court agrees with the plaintiff that the October 27, 2021 email referenced by the defendant appears to only pertain to the plaintiff's first request, in light of the subject line of the email, see Judge Decl., Ex. A (Oct. 27, 2021 Email) at 1 (reflecting the subject line "RE: Downs – Coast Guard – FOIA Request Dated 17JUN20- 2020-CGFO-01820"); Def.'s Facts ¶ 10 (stating that the "Office of Privacy Management assigned [the p]laintiff's first FOIA request the tracking number 2020-CGFO-01820"), as well as the defendant's statement that this email correspondence took place between the plaintiff and the "FOIA Officers . . . assigned to process [the p]laintiff's first request[,]" Def.'s Opp'n at 14 (emphasis added).

Thus, based upon "the Court's read of the text of th[is email] in the broader context of" this case and the plaintiff's other "communications with the [defendant] concerning [its] FOIA requests," Dillon, 444 F. Supp. 3d at 85, the Court concludes that the plaintiff did not formally narrow its first FOIA request. Furthermore, because the defendant represents that, as a result of the plaintiff's email, it "ceased searching for records other than those that contained lists of the names of the Coast Guard members that participated in the 2010 Deepwater Horizon BP oil spill clean-up operations[,]" Def.'s Opp'n at 15, the Court will direct the defendant to conduct

additional searches in order to fulfill the plaintiff's FOIA requests as originally constructed, see Def.'s Facts ¶ 1; Pl.'s Facts ¶ 1.[3]

## 2.  Whether the Defendant Adequately Described Its Search Methodology

Next, the plaintiff argues that the defendant "failed to show that it conducted an adequate search for records[,]" Pl.'s Mem. at 14, because although the defendant's declarant provided the names of the offices that were assigned to search records, as well as the fact that these offices conducted searches, he "does not describe which files were searched, nor the search terms used in each office[,]" id. at 15 (internal quotation marks omitted).  In response, the defendant argues that, in its declaration, it has "explained the methods and specific search terms used to search for responsive records[,]" Def.'s Opp'n at 15 (citing Judge Decl. ¶¶ 10–22), by articulating "what units and offices were initially assigned to the search[,]" id., "what personnel were involved in conducting the search[,]" id. at 15–16, and "those units and personnel who were contacted and involved in furthering the search upon the identification of leads where additional responsive documents may be located[,]" id. at 16 (citing Judge Decl. ¶¶ 14, 15, 17).  Furthermore, the defendant states that "[s]earch terms were not the only means by which agency personnel conducted their search[es;]" rather, "personnel also located responsive documents by leveraging their experience and knowledge of the information and Coast Guard structure[.]"  Id.

Regarding the defendant's general procedure for processing FOIA requests, the defendant's declarant states that "the Office of Privacy Management logs the request into the

---

[3] The Court notes that the defendant must conduct additional searches as to both of the plaintiff's FOIA requests, given that the content of each of the requests are essentially identical and thus, in response to what the defendant interpreted as a narrowing of the plaintiff's first request, neither request was fulfilled.  See Def.'s Opp'n at 15 (stating that, in response to what the defendant construed as a narrowing of the plaintiff's requests, "[the d]efendant ceased searching for records other than those that contained lists of the names of the Coast Guard members that participated in the 2010 Deepwater Horizon BP oil spill clean-up operations").

Coast Guard's FOIA Status Report Database, a tool to track the status of FOIA requests[,]"

Judge Decl. ¶ 9;[4] and,

> [a]fter logging the request into this database, [ ] evaluates the apparent subject matter of the request and sends it to the Coast Guard unit(s) or office(s) most likely to have responsive records, as the Coast Guard does not have a centralized

---

[4] As noted earlier, see supra note 2, Local Civil Rule 5.1(f) and 28 U.S.C. § 1746 provide that a court may rely on an unsworn declaration, "only where the declarant signs the declaration under penalty of perjury." Yanofsky, 2022 WL 2980344, at *3 (citing LCvR 5.1(f); 28 U.S.C. § 1746). Specifically, § 1746 states:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same . . . , such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
> . . .
>
> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)[.]"[]

28 U.S.C. § 1746(2). See also LCvR 5.1(f)(2) (requiring that verification be made in "substantially the following form: . . . (2) If executed within the United States, its territories, possessions, or commonwealths: 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature).'").

Here, the defendant's first unsworn declaration by Brian Judge is signed, see Judge Decl. at 14, but not accompanied by a statement certifying the submission under penalty of perjury as required by § 1746(2), see generally id. The declarant does, however, begin by stating, "Pursuant to 28 U.S.C. § 1746, I, Brian Judge, hereby declare: . . . [,]" id. at 1, and further states that "[he is] familiar with the record and facts relating to this matter and ha[s] personal knowledge, or knowledge supplied to [him] by employees under [his] supervision and other [United States] Coast Guard employees on which [he] rel[ies] to perform [his] duties, for the information contained in this declaration[,]" id. ¶ 2. While these statements do not directly track the required language of Rule 51(f)(2) or 28 U.S.C. § 1746(2), "Local Rule 5.1([f]) and 28 U.S.C. § 1746 contemplate as adequate certifications that are substantially in the form of the language of their provisions." Cobell v. Norton, 391 F.3d 251, 260 (D.C. Cir. 2004) (emphasis added) (internal quotation marks omitted). And, this Circuit has held that "[a] declaration or certification that includes the disclaimer 'to the best of [the declarant's] knowledge, information or belief' is sufficient under [Rule 51(f) and 28 U.S.C. § 1746]." Id. Therefore, although it is a close question, the Court concludes that the declarant's reference to 28 U.S.C. § 1746, see Judge Decl. at 1, combined with his statement regarding the personal or otherwise acquired knowledge in support of his unsworn declaration, see id. ¶ 2, suffice to "substantially" comply with the relevant verification requirements, see LCvR 5.1(f); 28 U.S.C. § 1746. Compare Judge Decl. ¶ 2 ("I am familiar with the record and facts relating to this matter and have personal knowledge, or knowledge supplied to me by employees under my supervision and other [United States] Coast Guard employees on which I rely to perform my duties, for the information contained in this declaration."), with Cobell, 391 F.3d at 260 (concluding that an unsworn declaration was admissible under § 1746 where the declarant "include[d] the disclaimer 'to the best of [the declarant's] knowledge, information or belief'"). Accordingly, the Court may properly consider the defendant's first declaration from Brian Judge, despite its lack of strict compliance with the language required in Rule 5.1(f)(2) and 28 U.S.C. § 1746(2).

document management system that it can search when it receives a FOIA request[,]

id. ¶ 10.  Furthermore, once a request has been assigned to the appropriate office, "a collateral-duty FOIA officer searches for responsive documents and prepares a response."  Id. ¶ 11.  "Generally, this requires the FOIA officer to contact other employees of that unit or office to determine if they have any responsive documents."  Id.  The FOIA officer "searches in all files that are likely to have responsive documents[,]" and will typically "search networked hard drives and computer servers by conducting a key-word search."  Id.

"An agency fulfills its obligations under [the] FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents[,]" Valencia-Lucena, 180 F.3d at 325, and "court[s] appl[y] a reasonableness test to determine the adequacy of a search methodology, consistent with congressional intent tilting the scale in favor of disclosure[,]" Morley, 508 F.3d at 1114 (internal quotation marks omitted).  Furthermore,

> at the summary judgment stage, where the agency has the burden to show that it acted in accordance with the statute, the [C]ourt may rely on a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.

Chambers, 568 F.3d at 1003 (internal quotation marks omitted).  Summary judgment is inappropriate where a defendant's affidavit "merely identifies the [ ] directorates that were responsible for finding responsive documents without 'identify[ing] the terms searched or explain[ing] how the search was conducted' in each component."  Morley, 508 F.3d at 1122 (quoting Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990)) (second and third alterations in original).  In other words, a search is inadequate where the defendant "provide[s] insufficient detail as to the search terms o[r] the nature of th[e] electronic search process[,]" Parker v. U.S. Immigr. & Customs Enf't, 238 F. Supp. 3d 89, 104 (D.D.C. 2017) (internal

quotation marks omitted), because "[w]ithout [ ] knowing which search terms [the defendant's] offices used to search electronic files, the Court cannot conclude that these searches were adequate[,]" Roseberry-Andrews v. Dep't of Homeland Sec., 299 F. Supp. 3d 9, 24 (D.D.C. 2018) (concluding that the defendant's search was inadequate based upon its failure to (1) "provide the search terms" used and (2) "explain why [multiple] offices used inconsistent terms").

Here, although the defendant, through its declarant, has identified the units, offices, and personnel involved in the searches conducted in response to the plaintiff's requests, see Judge Decl. ¶¶ 12–24, and has asserted that "all places likely to contain responsive records have been searched[,]" id. ¶ 8, it has failed to explain its search methodology in this case with sufficient specificity to warrant summary judgment.  The defendant's declarant states that the Office of Privacy Management "forwarded the first request to . . . the Office of Investigations Casualty Analysis, the Personnel Service Center, District Eight, and the Office of Governmental and Public Affairs[,]" and "forwarded the second request to the Office of Investigations Casualty Analysis."  Id. ¶ 15.  According to the Judge Declaration, the Personnel Service Center "searched their files for awards records related to Deepwater Horizon[,]" id. ¶ 19; see id. ¶¶ 21–22 (identifying the particular staff member who searched for Deepwater Horizon awards records); District Eight personnel "searched electronic files containing awards generated, processed, and completed through his office for files related to Deepwater Horizon[,]" id. ¶ 26, and "conducted a keyword search of District Eight's shared folders . . . using the search terms 'deepwater horizon,' 'DWH,' and 'deepwater horizon awards,'" id. ¶ 27; the Office of Governmental and Public Affairs "located blog posts and imagery responsive to the original request, which were released to [the p]laintiff[,]" id. ¶ 28, but otherwise "was unlikely to contain records responsive

to the [allegedly] narrowed request[,]" id.; and the Office of Investigations Casualty Analysis "returned the original request back to the Office of Privacy Management in December 2020, stating that the requested information did not exist in the Coast Guard's Marine Information for Safety and Law Enforcement [ ] database[,]" id. ¶ 29.

Thus, with the exception of District Eight, see id. ¶ 27, the defendant has failed to articulate the search terms used by the various offices, and therefore has not provided "a complete list of the search terms used in response to [the plaintiff's] FOIA request[,]" Walston v. Dep't of Def., 238 F. Supp. 3d 57, 65 (D.D.C. 2017). Moreover, as to all offices that conducted searches for records, the defendant has not "'explain[ed] how the search was conducted' in each component[,]" Morley, 508 F.3d at 1122 (quoting Oglesby, 920 F.2d at 68), beyond the conclusory statements regarding the relevant personnel "search[ing] their files[,]" Judge Decl. ¶ 19 and "search[ing] electronic files[,]" id. ¶ 26. See Weisberg v. U.S. Dep't of Justice, 627 F.2d 365, 370 (D.C. Cir. 1980) (reversing the district court's entry of summary judgment for the defendant agency where the defendant's declarant merely stated that he had "conducted a review of [physical] [Federal Bureau of Investigation ('] FBI[')] files which would contain information that [the plaintiff] ha[d] requested"); Parker, 238 F. Supp. 3d at 104 (denying summary judgment where the defendant's declaration "provided insufficient detail" as to the "nature of [the defendant's] electronic search process"). Therefore, the defendant's declarations "lack[] the detail 'necessary . . . to allow the [ ] [C]ourt to determine if the search was adequate in order to grant summary judgment.'" Morley, 508 F.3d at 1122 (quoting Oglesby, 920 F.2d at 68).

Accordingly, the Court concludes that it must deny without prejudice both the defendant's motion and the plaintiff's cross-motion as to the adequacy of the defendant's search. The Court therefore directs the defendant to conduct additional searches in order to fulfill the

plaintiff's FOIA requests as originally constructed, in light of the parties' factual dispute regarding the alleged "narrowing" of the plaintiff's FOIA request.

**B.     The Defendant's Withholdings Under Exemption 6**

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]"  5 U.S.C. § 552(b)(6).  Exemption 6 is designed "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information" maintained in government records, U.S. Dep't of State v. Wash. Post Co., 456 U.S. 595, 599 (1982), regardless of "the label [on] the file," id. at 601.  "The Court's first task in assessing whether non-disclosure is warranted [pursuant to Exemption 6] is to determine whether the responsive records are personal, medical or similar files."  Houser v. U.S. Dep't of Health & Hum. Servs., 486 F. Supp. 3d 104, 115 (D.D.C. 2020) (Walton, J.) (citing Multi Ag Media LLC v. U.S. Dep't of Agric., 515 F.3d 1224, 1228 (D.C. Cir. 2008)); see Gov't Accountability Project v. U.S. Dep't of State, 699 F. Supp. 2d 97, 105–06 (D.D.C. 2010) ("The term[] 'similar files' is construed broadly and 'is intended to cover detailed [g]overnment records on an individual which can be identified as applying to that individual.'" (quoting Wash. Post Co., 456 U.S. at 602)).  "The information in the file 'need not be intimate' for the file to satisfy the standard, and the threshold for determining whether information applies to a particular individual is minimal."  Milton v. U.S. Dep't of Just., 783 F. Supp. 2d 55, 58 (D.D.C. 2011) (quoting N.Y. Times Co. v. Nat'l Aeronautics & Space Admin., 920 F.2d 1002, 1006 (D.C. Cir. 1990)).  Once that threshold requirement is met, the Court must determine whether disclosure of the information "would constitute a clearly unwarranted invasion of personal privacy."  Multi Ag Media LLC, 515 F.3d at 1228 (quoting 5 U.S.C. § 552(b)(6)).  "This second inquiry requires [the Court] to balance the

privacy interest that would be compromised by disclosure against any public interest in the requested information."  Id.

Here, the defendant has redacted all three awards tracking sheets, see Judge Decl. ¶ 17; see generally id., Ex. A (Vaughn Index) at 8–11, ECF No. 12-1 (reflecting redactions), as well as "ALCOAST 515/10, a service-wide message providing award guidance for the Deepwater Horizon oil spill response[,]" id. ¶ 34(d), all of which were released to the plaintiff, id., Ex. A (Vaughn Index) at 8–11.  The defendant applied Exemption 6 to the redaction of these records in order to withhold "[t]he personally identifying information of junior Coast Guard personnel (Commander/GS-15 and below)[,]" namely, "[i]ndividuals' names, ranks, rates, e-mail addresses, and phone numbers[.]"  Id., Ex. A (Vaughn Index) at 8–11.  The defendant argues that this information is properly withheld under Exemption 6 because the relevant individuals "have a legitimate privacy interest in keeping their personal contact information and identities from being disclosed to the public" to "protect against identity theft or fraud" and because "Coast Guard personnel, in particular, are associated with the Department of Homeland Security [ ], which has multiple sensitive law[-]enforcement and intelligence[-]gathering missions."  Def.'s Mem. at 14. The defendant further states that "[the p]laintiff has not pointed to any evidence that disclosure of personally identifying information contained in these records would shed light on agency functions or that the incremental public interest in such information is sufficient to outweigh the privacy interests at stake."  Id. at 15.  In response, the plaintiff argues that (1) "[a] record listing award recipients from the Deepwater Horizon Oil Spill cleanup is neither a medical file, a personnel file, or a similar file[,]" Pl.'s Mem. at 19, (2) "[r]ecipients of awards for commendable performance . . . have no substantial privacy interest in these records[,]" id. at 21, because the names of the recipients are in the public domain, see id. at 23–25, and (3) there is a substantial

public interest in release of these records because they "will shed light on the operations of the Coast Guard as the names will show who the Coast Guard was willing to put at risk" and "can be used to protect those members who are still alive," id. at 31.

### 1. Whether the Withheld Files Constitute Personal, Medical, or Similar Files

First, the Court must determine whether the records withheld by the defendant constitute "personal, medical or similar files[,]" Houser, 486 F. Supp. 3d at 115, within the meaning of Exemption 6. As reflected in the Vaughn index, the records at issue are three spreadsheets—(1) one "contain[ing] District Eight's master list of Coast Guard personnel who received the Special Operations Service Ribbon [ ] for service in support of the Deepwater Horizon response[,]" Judge Decl., Ex. A (Vaughn Index) at 9; (2) one "contain[ing] the D[istrict Eight] Awards Team's tracking spreadsheet for the status of awards related to Coast Guard personnel's service in support of the Deepwater Horizon response[,]" id., Ex. A (Vaughn Index) at 10; and (3) one "contain[ing] a list of Coast Guard Special Operations Service [ ] Ribbon recipients for service in support of the Deepwater Horizon response[,]" id., Ex. A (Vaughn Index) at 10–11. Additionally, the defendant has also redacted a record labeled "ALCOAST 515/10[,]" which is described as "a service-wide message providing award guidance for service in support of the Deepwater Horizon response." Id., Ex. A (Vaughn Index) at 8.

The Court first notes that these records do not contain any medical information, see generally id., Ex. A (Vaughn Index) at 8–11, so they cannot be construed as "medical files[,]" 5 U.S.C. § 552(b)(6), within the meaning of Exemption 6. See, e.g., Plain Dealer Pub'g Co. v. U.S. Dep't of Lab., 471 F. Supp. 1023, 1027 n.5 (D.D.C. 1979) (classifying as "medical files" "physician's letters regarding [the plaintiff's] condition, progress, [ ] ability to work[, and] [ ] cause of [ ] disability; a questionnaire regarding [the plaintiff's] disability; a letter from the

Medical Director to [the plaintiff's] physician . . . ; a clinical psychologist's evaluation . . . ; certificates of medical examinations; and doctor's statements").  And, although they contain some "personally identifying information of junior Coast Guard personnel[,]" Judge Decl., Ex. A (Vaughn Index) at 8–10, they "lack the attributes of 'personnel files' as commonly understood[,]" Dep't of Air Force v. Rose, 425 U.S. 352, 376 (1976).  For example, they "do not contain the vast amounts of personal data, which constitute the kind of profile of an individual ordinarily to be found in his [or her] personnel file[.]"  Id. at 377 (listing as examples of personal data "where [an individual] was born, the names of his [or her] parents, where he [or she] has lived from time to time, his [or her] high school or other school records, results of examinations, [and] evaluations of his [or her] work performance").  Moreover, these awards-tracking spreadsheets and "service-wide message providing award guidance[,]" Judge Decl., Ex. A (Vaughn Index) at 8, are not subject to the kind of "drastically limited" access that is customary for personnel files, Rose, 425 U.S. at 377.  In fact, much of the content of these records—i.e., the names of individuals who were given awards—appears to have been presented in conjunction with public ceremonies.  See Pl.'s Mem. at 31 ("[M]edals, ribbons, and informal awards [were] presented to service members at promotion and advancement ceremonies, retirement ceremonies, end-of-tour luncheons, 'All Hands' gatherings, Changes of Command, and other gatherings where a service member is publicly recognized." (quoting Declaration of Captain Lincoln D. Stroh, USCG (Retired) ("Stroh Decl.") ¶ 9, ECF No. 14-4)).  Thus, these records do not constitute "personnel [or] medical files" under Exemption 6.  5 U.S.C. § 552(b)(6).

However, the Court concludes that these records do constitute "similar files" under Exemption 6.  5 U.S.C. § 552(b)(6) (emphasis added).  Even if a record is not a personnel or medical file per se, it may nonetheless be considered a "similar file" under Exemption 6 if it

contains "bits of personal information, such as names and addresses, the release of which would 'create[] a palpable threat to privacy[,]'" Jud. Watch, Inc. v. Food & Drug Admin., 449 F.3d 141, 152–53 (D.C. Cir. 2006) (quoting Carter v. U.S. Dep't of Com., 830 F.2d 388, 391 (D.C. Cir. 1987)) (second alteration in original).  See Skybridge Spectrum Found. v. Fed. Commc'ns Comm'n, 842 F. Supp. 2d 65, 83 (D.D.C. 2012) ("[C]ourts look 'not to the nature of the files,' but rather to 'the nature of the information' at issue.'" (quoting N.Y. Times Co., 920 F.2d at 1006)).  The threshold applicable to whether a record constitutes a "similar file" is "minimal[,]" Wash. Post Co., 690 F.2d at 260, as "[t]he information need not be intimate; the threshold for application of Exemption 6 is crossed if the information merely 'applies to a particular individual[,]'" N.Y. Times Co., 920 F.2d at 1006 (quoting Wash. Post Co., 690 F.2d at 602). The records at issue in this case contain "bits of personal information, such as names[,]" Jud. Watch, Inc., 449 F.3d at 152, each piece of which "applies to a particular individual[,]'" Wash. Post Co., 690 F.2d at 602.  See Judge Decl., Ex. A (Vaughn Index) at 8–10 (describing the records at issue as containing "personally identifying information of junior Coast Guard personnel[,]" such as "[i]ndividuals' names, ranks, rates, e-mail addresses, and phone numbers"). Accordingly, the Court concludes that the records redacted by the defendant constitute "similar files" for purposes of Exemption 6.  See Jud. Watch, Inc., 449 F.3d at 152 (defining as "similar files" as those which contain "bits of personal information, such as names and addresses").

## 2. Whether the Redacted Information Implicates a Substantial Privacy Interest

Having addressed the threshold issue of whether the redacted records in this case constitute "personal, medical or similar files[,]" Houser, 486 F. Supp. 3d at 115, the Court must next determine whether disclosure of the redacted information "would constitute a 'clearly unwarranted invasion of personal privacy[,]'" Multi Ag Media LLC, 515 F.3d at 1228 (quoting 5 U.S.C. § 552(b)(6)).  Specifically, the Court must determine whether disclosure "'would

compromise a substantial, as opposed to <u>de minimis</u>, privacy interest,' because '[i]f no

significant privacy interest is implicated[,] . . . FOIA demands disclosure.'"   <u>Id.</u> at 1229 (quoting

<u>Nat'l Ass'n of Retired Fed. Emps. v. Horner</u>, 879 F.2d 873, 874 (D.C. Cir. 1989)) (underline in

original).  However, "[this] standard 'means less than it might seem[,]' as a substantial privacy

interest is 'anything greater than a <u>de minimis</u> privacy interest.'"   <u>Ctr. for Med. Progress v. U.S.</u>

<u>Dep't of Health & Hum. Servs.</u>, No. 21-cv-642 (BAH), 2022 WL 4016617, at *12 (D.D.C.

Sept. 3, 2022) (quoting <u>Multi Ag Media LLC</u>, 515 F.3d at 1229–30) (underline in original).  And

while "the government cannot rely on an otherwise valid exemption claim to justify withholding

information that has been 'officially acknowledged' or is in the 'public domain[,]'"   <u>Davis v. U.S.</u>

<u>Dep't of Just.</u>, 968 F.2d 1276, 1279 (D.C. Cir. 1992) (quoting <u>Afshar v. Dep't of State</u>,

702 F.2d 1125, 1130–34 (D.C. Cir. 1983)), "a plaintiff asserting a claim of prior disclosure must

bear the initial burden of pointing to specific information in the public domain that appears to

duplicate that [information] being withheld[,]"   <u>Afshar</u>, 702 F.2d at 1130.

Here, the plaintiff argues that the disclosure of the names of award recipients does not

implicate a substantial privacy interest because "[the p]laintiff is requesting records of publicly

acknowledged awards[,]" which are in the public domain.  Pl.'s Mem. at 23.  In support of this

argument, the plaintiff presents declaration testimony confirming the routine public presentation

of the type of award sought by the plaintiff, <u>see</u> Stroh Decl. ¶¶ 8, 11, 13, 21, 26; and submits

evidence of Facebook posts reflecting names of award recipients, Stroh Decl., Ex. 109 (U.S.

Coast Guard Sector New Orleans Facebook Post) at 1, ECF No. 14-4 (showing written

information and pictures of a Coast Guard awards ceremony), as well as an issue of the Coast

Guard Reserve Magazine that "lists the names, rates[,] and ratings of hundreds of award

recipients[,]" Declaration of Charles Grady ("Grady Decl.") ¶ 8, ECF No. 14-5; <u>see id.</u>, Ex. 106

(Reservist Magazine Issue) at 2, ECF No. 14-5 (listing award recipients).

While the Court agrees with the plaintiff's declarant, Charles Grady, that Coast Guard

awards like the ones referenced in this case appear to be "made very publicly[,]" Grady Decl. ¶

7, the plaintiff has not provided the type of evidence necessary to show that the specific

information it seeks "has been 'officially acknowledged' or is in the 'public domain[,]'" <u>Davis</u>,

968 F.2d at 1279 (quoting <u>Afshar</u>, 702 F.2d at 1130–34).   Namely, although the plaintiff's

evidence shows that names of Coast Guard award recipients are regularly made public, it has

failed to satisfy its "initial burden of pointing to <u>specific information</u> in the public domain that

appears to duplicate that [information] being withheld[,]" <u>Afshar</u>, 702 F.2d at 1130 (emphasis

added), <u>i.e.</u>, the names of the individual award recipients that it seeks in this case.   See <u>Bartko v.</u>

<u>U.S. Dep't of Just.</u>, 167 F. Supp. 3d 55, 71 (D.D.C. 2016) (stating that, to satisfy her, his, or its

burden, a plaintiff "must show that the information requested is as specific as the information

previously released, that it matches that information, and that it has already been made public

through an official and documented disclosure"); <u>see also</u> <u>Neary v. Fed. Deposit Ins. Corp.</u>,

104 F. Supp. 3d 52, 60 (D.D.C. 2015) ("Th[is] test is exacting because 'the fact that information

exists in some form in the public domain does not necessarily mean that official disclosure will

not cause harm cognizable under a FOIA exemption.'" (quoting <u>Wolf v. Cent. Intel. Agency</u>,

473 F.3d 370, 378 (D.C. Cir. 2007))).   Thus, there is insufficient evidence in this case to

conclude that there is "specific information in the public domain that appears to duplicate [the

requested records] being withheld[,]" <u>Afshar</u>, 702 F.2d at 1130.

However, although the plaintiff has not met its burden of showing that the information at

issue is in the public domain, the Court agrees with the plaintiff that "[t]he plaintiff is not

requesting records that would constitute an unwarranted invasion of privacy[,]" Pl.'s Mem. at 23, and the Court finds that the defendant's description of the asserted substantial privacy interest in this case is insufficient.  The plaintiff has made clear that, with respect to the records of individual award recipients, it is "asking for name and award, not rate, rank, address, email, phone, date of birth, employee identification number, []or . . . any additional personal information beyond the award and name."  Id. at 27.  In support of its redactions under Exemption 6, the defendant asserts that, as to each requested record,

> [t]he individual privacy interest in this information . . . is substantial.  Because Coast Guard personnel are associated with the Department of Homeland Security, which has multiple sensitive law enforcement and intelligence gathering missions, they have a substantial interest in having their personally identifying information—including their names, rate and rank, duty address, and titles—protected and withheld.  [Department of Homeland Security] personnel and their family members are vulnerable to harassment or violence from individuals who maliciously acquire and disseminate this type of information.

Judge Decl., Ex. A (Vaughn Index) at 8–11.  Thus, the defendant hinges its withholding of award recipients' names on the Department of Homeland Security's "sensitive law enforcement and intelligence gathering missions" and the resulting vulnerability of Coast Guard personnel and family members to "harassment or violence[.]"  Id. ¶ 37.  The defendant also states that "[t]he Deepwater Horizon incident and response are well-known and highly publicized events; therefore, these individuals are at heightened risk of unwanted contact."  Id.

"While it is true that this Court and others in this jurisdiction have recognized that law enforcement and national security officials have substantial privacy interests in their identities," White Coat Waste Project v. U.S. Dep't of Veterans Affs., 404 F. Supp. 3d 87, 103 (D.D.C. 2019), Exemption 6 "does not categorically exempt individuals' identities because the privacy interest at stake may vary depending on the context in which it is asserted[,]" Am. Immigr. Laws. Ass'n v. Exec. Off. for Immigr. Rev., 830 F.3d 667, 675 (D.C. Cir. 2016)

(internal quotation marks omitted).  And, where a defendant asserts a substantial privacy interest based upon the threat of harassment or injury, the "'risk' of harassment [must be] both 'justified and articulable[,]'" Ctr. for Med. Progress, 2022 WL 4016617, at *13 (quoting Jud. Watch, Inc. v. U.S. Dep't of State, 875 F. Supp. 2d 37, 47 (D.D.C. 2012)), because the defendant must show that the harassment or other injury "is likely to occur[,]" Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 35 (D.C. Cir. 2002).  See Rose, 425 U.S. at 380 n.19 ("The legislative history is clear that Exemption 6 was directed at threats to privacy more palpable than mere possibilities.").

Here, the defendant has not sufficiently articulated how revealing only the names of Coast Guard personnel in the context of their receiving awards for their service would create a "palpable[,]" id., risk of harassment or violence.  To the extent that the defendant relies generally on the "sensitive law enforcement and intelligence gathering missions" involved in work performed by those individuals, Judge Decl. ¶ 37, this statement of justification falls short of satisfying the defendant's "burden of showing that a substantial invasion of privacy will occur if the documents are released . . . by affidavits . . . contain[ing] 'reasonable specificity of detail rather than merely conclusory statements[,]'" Prison Legal News v. Samuels, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (quoting Jud. Watch, Inc. v. U.S. Secret Serv., 726 F.3d 208, 215 (D.C. Cir. 2013)).  Therefore, the Court is unable to discern a "justified and articulable[,]" Jud. Watch, Inc., 875 F. Supp. 2d at 47, risk of harassment or violence based on this generalized allegation of potential harm.  Compare, e.g., Judge Decl. ¶ 37 (stating that because "the Coast Guard is a component of the Department of Homeland Security and a spearhead agency for homeland security, having multiple sensitive law enforcement and intelligence gathering missions[,]" "Coast Guard personnel and their family members are vulnerable to harassment or violence from

individuals who maliciously acquire and disseminate this type of information"), <u>with</u> <u>Am. Civ.</u>
<u>L. Union v. Bureau of Prisons</u>, No. 20-cv-2320 (RBW), 2022 WL 17250300, at *11–12 (D.D.C.
Nov. 28, 2022) (Walton, J.) (concluding that the defendant had articulated a substantial privacy
interest in identities of individuals involved in the administration of the death penalty—"a
highly-sensitive and emotionally-charged issue"—by stating that "the mission and nature of the
work of these staff members render them vulnerable to harassment, threats[,] or attack" and
"disclosure of the names and personal-contact information of these staff members would permit
the targeting of individual employees, as well as potentially their families and friends outside the
workplace" (alterations in original) (internal quotation marks omitted)).  Moreover, to the extent
that the defendant relies upon the fact that "[t]he Deepwater Horizon incident and response are
well-known and highly publicized events[,]" Judge Decl. ¶ 37, as a basis for asserting that the
Coast Guard personnel involved "are at heightened risk of unwanted contact[,]" <u>id.</u>, it is unclear
based upon the defendant's explanation how the disclosure of their names in the context of
award ceremonies in which they have been lauded for their service in the clean-up effort would
subject them to a risk of harassment and violence.

    Therefore, the Court concludes that the defendant has not sufficiently articulated how the
disclosure of the award recipients' names would "implicate" a "significant privacy interest."
<u>Horner</u>, 879 F.2d at 874.  And, where no significant privacy interest is implicated, the Court need
not engage in the balancing inquiry normally required under Exemption 6.  <u>See</u> <u>id.</u> ("If no
significant privacy interest is implicated (and if no other Exemption applies), FOIA demands
disclosure.  If, on the other hand, a substantial privacy interest is at stake, then [a court] must
weigh the privacy interest in non-disclosure against the public interest in the release of
records[.]" (internal citation omitted)).  Accordingly, the Court will deny without prejudice both

the defendant's motion and the plaintiff's motion as to the defendant's assertion of Exemption 6 and direct the defendant to provide additional information regarding its assertion of Exemption 6 as a basis for withholding the names of Coast Guard personnel who received awards related to their service in connection with the Deepwater Horizon oil spill response.

## D.      Segregability

Finally, the Court must address whether the defendant provided the plaintiffs with all reasonably segregable information.  Under the FOIA, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."  5 U.S.C. § 552(b).  "[I]t has long been the rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions."  Wilderness Soc'y v. U.S. Dep't of Interior, 344 F. Supp. 2d 1, 18 (D.D.C. 2004) (Walton, J.) (emphasis omitted).  Therefore, because "[t]he focus of the FOIA is information, not documents, [ ] an agency cannot justify withholding an entire document simply by showing that it contains some exempt material."  Mead Data Ctr., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).  "A district court's determination that agency records are exempt from disclosure under the FOIA is subject to remand if the court does not also make specific findings on the question of segregability[,]" Jud. Watch, Inc. v. U.S. Dep't of Def., 245 F. Supp. 3d 19, 36 (D.D.C. 2017) (Walton, J.), "even if the requester did not raise the issue of segregability before the [C]ourt[,]" Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1116 (D.C. Cir. 2007).

To provide the Court the ability to appropriately assess segregability, it "must be provided with a 'relatively detailed description' of the withheld material."  Jud. Watch, Inc., 245 F. Supp. 3d at 36 (citing Krikorian v. U.S. Dep't of State, 984 F.2d 461, 467 (D.C. Cir.

1993)).  To comply with this requirement, "[a]gencies must review the withheld documents and

determine whether, absent the exempted material, the resulting document would still be

comprehensible, or whether 'the result would be an essentially meaningless set of words and

phrases.'"  Id. at 36 (citing Mead Data Ctr., 566 F.2d at 261).  "[T]o show that an entire

document cannot be produced[,]" an agency must conduct "[a] 'document-by-document' review

and [provide] a declaration that each piece of information that is withheld is not reasonably

segregable[.]"  Id. (citing Juarez v. U.S. Dep't of Just., 518 F.3d 54, 61 (D.C. Cir. 2008)).

     Although "'[a]gencies are entitled to a presumption that they complied with the

obligation to disclose reasonably segregable material[,]'"  Ecological Rts. Found. v. U.S. Env't

Prot. Agency, 541 F. Supp. 3d 34, 66 (D.D.C. 2021) (quoting Sussman, 494 F.3d at 1117), an

"agency must provide a 'detailed justification' for [the exempt material's] non-segregability[,]"

id. (alterations in original) (quoting Johnson v. Exec. Off. for U.S. Att'ys, 310 F.3d 771, 776

(D.C. Cir. 2002)).  "Affidavits attesting to the agency's 'line-by-line review of each document

withheld in full' and the agency's determination 'that no documents contained releasable

information which could be reasonably segregated from the nonreleasable portions,' in

conjunction with a Vaughn index describing the withheld record, suffice."  Id. (quoting Johnson,

310 F.3d at 776).

     Here, the Court concludes that, to the extent the defendant has properly withheld some

records pursuant to Exemption 6, the defendant has also adequately demonstrated that it

"disclose[d all] reasonably segregable material."  Sussman, 494 F.3d at 1117.  The defendant has

"provided [the Court] with a relatively detailed description of the withheld material[,]"  Jud.

Watch, Inc., 245 F. Supp. 3d at 36 (internal quotation marks omitted).  See Judge Decl., Ex. A

(Vaughn Index) at 8–11.  The defendant also represents that it "conducted [a] detailed, line-by-

line review to ensure all segregable information was released and only withheld information that would foreseeably harm the privacy interests protected by [E]xemption 6" and "[a]ll other segregable information contained in the records, including information about the number of personnel, the length and location of their service, and what actions they participated in, was released."  Id. ¶ 40.  Furthermore, the defendant states that "[n]o records were withheld in their entirety."  Id.  Based upon these representations, as well as its review of the defendant's declarations and briefs, the Court agrees that, to the extent the defendant has properly withheld some records under Exemption 6, the defendant only withheld information that is exempt from disclosure or material "inextricably intertwined with exempt portions."  Mead Data Cent., Inc., 566 F.2d at 260; see Porup v. Cent. Intel. Agency, 997 F.3d 1224, 1239 (D.C. Cir. 2021) (concluding that "the [a]gency [ ] carried its burden in demonstrating that it released all segregable portions of the responsive documents" where it gave sworn statements that "attested that the [a]gency had 'conducted a page-by-page and line-by-line review, and released all reasonably segregable, non-exempt information' within responsive records . . . [and it] determined that no additional information may be released without divulging information that [ ] falls within the scope of one or more FOIA exemptions" (internal citations omitted)).

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that it must deny without prejudice both the defendant's motion for summary judgment and the plaintiff's cross-motion for summary judgment.

**SO ORDERED** this 25th day of July, 2023.[5]

REGGIE B. WALTON
United States District Judge

---

[5] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.